# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 16-140

STATE OF LOUISIANA

VERSUS

STEVE DUANE WILLIAMS
AKA AYAZ SUTARIA

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, DOCKET NO. 317,214
HONORABLE MARY LAUVE DOGGETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, James T. Genovese, and John E. Conery, Judges.

CONVICTIONS AFFIRMED.
SENTENCES AFFIRMED AS AMENDED,
WITH INSTRUCTIONS.

**Edward K. Bauman**
**Louisiana Appellate Project**
**Post Office Box 1641**
**Lake Charles, Louisiana 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Steve Duane Williams**


**Steve (Stephen) D. Williams**
**Rapides Parish Detention Center III**
**7400 Academy Drive**
**Alexandria, Louisiana 71303**
    **In Proper Person**


**J. Phillip Terrell, Jr., District Attorney**
**Ninth Judicial District**
**Jermaine L. Harris, Assistant District Attorney**
**Post Office Drawer 1472**
**Alexandria, Louisiana 71309-1472**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**GENOVESE, Judge.**

Defendant, Steve Duane Williams (a/k/a Ayaz Sutaria), was convicted by a jury of one count of possession with intent to distribute cocaine and one count of possession of hydrocodone. After a habitual offender hearing, he was adjudicated a third felony offender and sentenced to twenty years at hard labor on the cocaine conviction and five years at hard labor on the hydrocodone conviction. He appeals his convictions and sentences. Through appellate counsel, he alleges insufficiency of the evidence and excessive sentences. Defendant has also filed a brief with pro se assignments or error, alleging various due process violations. For the following reasons, we affirm Defendant's convictions and sentences, but amend his sentence on the conviction of possession with intent to distribute cocaine to require that only the first two years of that sentence be served without benefit of parole. We also direct the trial court to give notice to Defendant of his right to post-conviction relief.

## PROCEDURAL HISTORY

Defendant was charged in October 2013 by a bill of information with one count of possession with intent to distribute a controlled dangerous substance, Schedule II, cocaine, a violation of La.R.S. 40:967(A)(1), one count of possession with intent to distribute a controlled dangerous substance, Schedule III, hydrocodone, a violation of La.R.S. 40:968(A)(1), and one count of possession of marijuana, second offense, a violation of La.R.S. 40:966(E)(2).

After commencement of Defendant's jury trial, the State *nolle prossequied* the charge of possession of marijuana. At trial, Defendant was found guilty as charged on count one, possession of crack cocaine with intent to distribute. On count two, he was found guilty of the lesser offense of possession of hydrocodone, a violation of La.R.S. 40:968(C). Defendant then filed a Motion for Post Verdict

Judgment of Acquittal and a Motion for Mistrial, which were denied. Thereafter, the State charged Defendant as a habitual offender pursuant to La.R.S. 15:529.1.

At his habitual offender hearing, Defendant was adjudicated a third felony offender. He was subsequently sentenced to twenty years at hard labor on the conviction for possession of cocaine with intent to distribute, without the benefit of parole, probation, or suspension of sentence, and five years at hard labor on the conviction for possession of hydrocodone. The two sentences were ordered to be served concurrently for a total of twenty years imprisonment. Defendant filed a Motion to Reconsider Sentence, which was denied by the trial court.

## FACTS

At trial, Eddie Andrus, a detective with the Rapides Parish Sheriff's Office, Metro Narcotics Division, testified that on April 30, 2013, he conducted an investigation involving Defendant. He stated that a woman, who had been apprehended with crack cocaine, informed the police that she had purchased the cocaine from someone she knew only as "Sonny."[1] She then took the police to 2108 Mason Street, Alexandria, Louisiana, the address where she had purchased the drug. Within twenty-four hours of receiving this information, the police obtained a search warrant for that address.

On May 3, 2013, as the police drove up to the house on Mason Street, they saw a man standing in the doorway. When the man saw them, he turned and raced towards the back of the house. Detective Andrus identified the man in the doorway as Defendant. As the door was still open, Detective Andrus said they announced themselves and entered. There was an elderly woman sitting in the front room, who was Defendant's mother. As they moved towards the back of the

---

[1] In the trial transcript, the person who sold the crack cocaine was referred to as "Sonny." In the search warrant affidavit and in Defendant's pro se brief, the person who sold the cocaine is referred to as "Sunny."

2

house, they saw Defendant exit a room, closing the door behind him. Defendant advised the officers not to enter because there was a vicious dog in the bedroom. Despite the warning, Detective Andrus entered the room. In the room, he and other detectives saw a marijuana blunt in an ashtray in plain sight. They located two baggies of a substance they believed to be crack cocaine, a pill bottle containing fifteen pills, and five and a half pills wrapped separately in plastic. In the bedroom, they also found a letter addressed to Defendant at the Mason Street address. Upon searching Defendant incidental to his arrest, they found two thousand four hundred and sixty-five ($2,465.00) dollars in his pocket. Along with the money was a Louisiana identification card with Defendant's name, picture, and the Mason Street address on it. There was no evidence in the bedroom that Defendant was employed.

Detective Andrus stated a second man was found sleeping in a back bedroom. He explained that the second man and Defendant's mother were not arrested. Although he agreed that they had access to the bedroom which contained the drugs, there was no evidence they were involved.

Detective Andrus testified that the pill bottle, labeled Alprazolam, was prescribed to Belinda M. Howard. He explained that Belinda Mills Howard was the woman who was initially caught with the crack cocaine purchased from "Sonny" at the Mason Street address.

John Treadway, also a detective with the Rapides Parish Sheriff's Office, Metro Narcotics Division, was with Detective Andrus when they arrived at Defendant's house. His testimony corroborated Detective Andrus' testimony. Detective Treadway also stated that the "vicious" dog in the bedroom was whimpering under the bed when they entered the room and did not come out as they searched. When he entered the room, Detective Treadway stated that he saw

3

the marijuana blunt in an ashtray on the dresser and that he located the baggies of crack cocaine and the pill bottle together behind an old gas heater.

Alex King, a forensic chemist with the North Louisiana Criminalistics Laboratory, did the analysis to determine the composition of the drugs found in the Mason Street house. Mr. King testified that the pills were pharmaceutical preparations containing hydrocodone with a non-narcotic ingredient. The off-white substance was determined to be cocaine. Mr. King further testified that the two baggies together contained 25.98 grams of cocaine.

Reginald Cooper, a lieutenant with the Alexandria Police Department, testified that in the year 2000, he had searched the Mason Street house based on information given to him by a confidential informant and had located a trunk full of drugs. On that occasion, Defendant was arrested and charged with distribution of cocaine as part of the investigation. In that prior case, Defendant pled guilty and was sentenced to fifteen years in prison.

Captain Larry Coutee, a thirty-eight year veteran with the Alexandria Police Department, was qualified as an expert in the field of distribution, packaging, and manufacturing of crack cocaine. He testified that he was also involved in the 2000 drug investigation which resulted in Defendant being convicted of distribution of crack cocaine. Captain Coutee further testified that, in the instant case, the amount of crack cocaine found, a less than twenty-six grams, was consistent with distribution of cocaine. He estimated the cost of the drugs Defendant had in his possession to be worth more than two thousand five hundred ($2,500.00) dollars, much more than what a person would usually spend at one time for personal use. He also explained that in the case of a dealer pedaling crack cocaine, there generally will not be regular drug user paraphernalia found with the drugs, which is another indicator that the drugs were not for personal use. Finally, he noted that

4

a large amount of money in the pocket of a suspected drug dealer can also be deemed to be evidence of his or her occupation as such.

Anthony Ferrell, Defendant's nephew, testified that the cocaine located behind the old gas heater belonged to him. He explained that he had been living with his grandmother, Defendant's mother, at the Mason Street house, in the same room where the drugs were located. At the time of Defendant's trial, Mr. Ferrell was in prison for offenses unrelated to drugs. At the time of his testimony, he had about two-and-a-half more years left to serve before he would be released from incarceration. He stated that shortly before he went to prison, he left the cocaine behind the gas heater for when he got out. Mr. Ferrell stated that the cocaine was for his personal use. He further stated that Defendant moved into the house after he became incarcerated, which was two to three months prior to Defendant's arrest. Mr. Ferrell also claimed that Belinda Howard had spent the night at his grandmother's house, had left the pill bottle, and had never returned to retrieve it; however, he was not clear about when Ms. Howard had stayed overnight and had no explanation as to how the pill bottle got behind the gas heater with the cocaine.

Defendant testified in his own defense. After a long diatribe about how he was picked on by police officers because he was African American, he explained that he had been living somewhere else, but was in the process of moving in with his mother. He stated that he had already changed his address to the Mason Street house and that that was the reason the letter found in the bedroom was sent to him at that address. He further stated that when he saw the police advancing on the house, he ran to put his puppy in the bedroom because he did not want the police to shoot the dog. He denied that the cocaine was his and stated that he did not even know the cocaine and the pill bottle were in the room.

5

# ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find two errors patent.

In the first error patent, we note an illegally excessive sentence relative to parole. Defendant was sentenced, as a third felony habitual offender, to serve twenty years at hard labor on his conviction of possession with the intent to distribute cocaine. The number of years to be served without the benefit of parole, probation, or suspension of sentence is not entirely clear. At Defendant's sentencing hearing, the trial court stated in pertinent part:

> I'm going to sentence you for possession with intent, CDS II to twenty years. . . . And will be without – under the statute will be[] without benefit of probation or suspension, but it doesn't say without benefit of parole. So I'm going to do a minimum of ten years without benefit of parole, probation or suspension of sentence.
>
> . . . .
>
> It's day per day? Okay. Well, I was reading the statute and it just said – it just said without benefit of – any sentence imposed under the provisions of this section shall be at hard labor without benefit of probation or suspension of sentence. And I didn't know what the distinction there was.
>
> . . . .
>
> So if for some reason that doesn't make it day per day, I'm going to do ten years without benefit of probation, parole or suspension of sentence. Otherwise it will be in accordance with the statute in DOC rules.

At the hearing on Defendant's Motion to Reconsider Sentence, the prosecutor, Mr. Harris, stated that he wished to clarify the sentence on the conviction for possession with the intent to distribute cocaine:

BY MR. HARRIS:

> He was sentenced to 20 years on the Count One, Possession with Intent to Distribute CDS II. I think there

was some confusion because one portion, I believe the Court said that it was 10 years suspended without parole and then I guess the other 10 years would've been eligible, but I believe that's not appropriate under the Statute for Habitual Offenders so I want the – and I believe you said that later, but the minutes don't reflect that.

BY THE COURT:

Okay. Yeah, I said it would be a minimum, unless the law provides otherwise. So if the law provides otherwise, then I defer to that. It would be, it would be all 20.

BY MR. HARRIS:

So could the minutes reflect that, that that is in fact not the case and for clarification purposes, it's 20 years hard labor on the Count One pursuant to the Habitual Offenders statute.

The trial court later issued "Written Reasons for Determination Pursuant to R.S. 15:529.1" which stated that the twenty year sentence for possession of cocaine with the intent to distribute is to be served without benefit of parole, probation, or suspension of sentence. Thus, it appears that the entire twenty year sentence was imposed without benefit of parole. This renders the sentence illegally excessive.

In *State v. Dossman*, 06-449, 06-450, pp. 2-3 (La.App. 3 Cir. 9/27/06), 940 So.2d 876, 879, *writ denied*, 06-2683 (La. 6/1/07), 957 So.2d 174, this court addressed a similar situation:

Although Section G of the habitual offender statute requires all enhanced sentences to be imposed without benefit of probation or suspension of sentence, it does not authorize the trial court to impose enhanced sentences without benefit of parole. La.R.S. 15:529.1(G). "[T]he restrictions on parole eligibility imposed on multiple offender sentences under La.R.S. 15:529.1 'are those called for in the reference statute.'" *State v. Tate*, 99-1483, pp. 1-2 (La.11/24/99), 747 So.2d 519, 520 (citation omitted). The penalty provision for unauthorized entry of an inhabited dwelling, the reference statute in the present case, does not authorize the trial court to impose any portion of the sentence without benefit of parole. La.R.S. 14:62.3. Thus, the trial court improperly denied parole eligibility. Accordingly, we amend Defendant's sentence to delete the denial of parole eligibility. *See*

7

*State v. Buckley*, 02-1288 (La.App. 3 Cir. 3/5/03), 839 So.2d 1193 and *State v. Gregrich*, 99-178 (La.App. 3 Cir. 10/13/99), 745 So.2d 694. Further, we instruct the trial court to make an entry in the minutes reflecting this change. *See Tate*, 747 So.2d 519.

The statute at issue, La.R.S. 40:967(B)(4)(b), requires that only the first two years of the sentence to be served without the benefit of parole. Accordingly, we amend Defendant's sentence for possession with the intent to distribute cocaine to require that only the first two years of his sentence be served without the benefit of parole. The trial court is instructed to make an entry in the court minutes reflecting this change.

The second error patent arises out of the fact that the record before this court does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. Thus, the trial court is directed to inform Defendant of the provisions of article 930.8 by sending appropriate written notice to Defendant within fifteen days of the rendition of this opinion and to file written proof in the record that said notice has been given. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## ASSIGNMENTS OF ERROR

The following assignments of error have been submitted by Defendant's appellate counsel and also by Defendant pro se:

ATTORNEY ASSIGNMENTS OF ERROR:

1. The evidence presented at trial, when viewed in a light most favorable to the prosecution, was insufficient to sustain the convictions.

2. The trial court erred in admitting evidence without having the [S]tate establish that the evidence was[,] in fact[,] what it was purported to be.

8

3. The sentences imposed by the trial court were cruel, unusual and excessive, in violation of Article I, § 20 of the Louisiana Constitution of 1974.

DEFENDANT'S PRO SE ASSIGNMENTS OF ERROR[2]:

[1.] Should the [c]ourt have allowed [Defendant] proper due process which would have allowed a preliminary examination?

[2.] The [c]ourt [erred] by not allowing [Defendant] his right to a fair trial.

[3.] By the [c]ourt not [allowing Defendant] a Preliminary Examination, probable cause was never cross-examined[,] and the court violated [Defendant's] rights[] by forming a[] conviction off of a partial record[,] whereas an appeal will be base[d] off of a partial judgment[] because certain evidence is not [a part] of the record[;] the affidavit of probable cause in support of the application for search warrant, initial police report, and supplemental police reports.

[4.] The evidence presented at trial was insufficient to sustain the conviction on possession with the intent to distribute.

[5.] The trial court failed to carry [its] burden of proof, probability of misidentification that [Defendant] was the offender [involved] in the incident of Belinda Mills.

[6.] The trial court [committed] fatal error in denying the [Defendant's] rights to Due Process.

[7.] The trial court [erred] in suppression of exculpatory evidence to aid the defense in preparing a proper defense for [Defendant].

**ATTORNEY ASSIGNMENT OF ERROR NUMBER ONE**

In brief, Defendant asserts that the State failed to prove that he had knowingly possessed the crack cocaine with intent to distribute or that he knowingly and illegally possessed hydrocodone.

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational

---

[2]For clarity, Defendant's seven pro se assignments of error have been categorized into five specific errors as argued in his brief and as hereinafter addressed.

trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979*); State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). The role of the factfinder is to weigh the respective credibility of each witness. Therefore, the appellate court should not second guess the credibility determinations of the factfinder beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino,* 436 So.2d 559, citing *State v. Richardson,* 425 So.2d 1228 (La.1983).

*State v. Miller*, 98-1873, p. 5 (La.App. 3 Cir. 10/13/99), 746 So.2d 118, 120, *writ denied*, 99-3259 (La. 5/5/00), 761 So.2d 541.

Further, in *State v. Ortiz*, 96-1609, p. 12 (La. 10/21/97), 701 So.2d 922, 930, *cert. denied*, 524 U.S. 943, 118 S.Ct. 2352 (1998), the Louisiana Supreme Court stated:

When circumstantial evidence is used to prove the commission of the offense, La.R.S. 15:438 requires that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction; all evidence, both direct and circumstantial must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. *State v. Porretto*, 468 So.2d 1142 (La.1985).

Defendant was convicted of possession of cocaine with intent to distribute and illegal possession of hydrocodone. Cocaine is a Schedule II controlled dangerous substance. La.R.S. 40:964(A)(4). Louisiana Revised Statutes 40:967(A)(1) provides that it is illegal to possess cocaine with the intent to distribute the drug. At the time Defendant was charged, hydrocodone with a non-narcotic ingredient was a Schedule III controlled dangerous substance. La.R.S. 40:964(D)(d). It is illegal to possess hydrocodone without a valid prescription. La.R.S. 40:968(C).

Defendant argues that he did not know the cocaine or the bottle of hydrocodone pills were in the bedroom. He points out that other people had access

10

to the room.  Defendant testified he was in the process of moving into his mother's house; thus, he had his mail forwarded to her house.  Defendant insisted he was unaware that the cocaine was in the room, hidden as it was behind an old gas heater, next to a pill bottle that contained hydrocodone pills with Belinda M. Howard's name on the label.  He further points out that Ms. Howard, who directed the police to the address on Mason Street, indicated she purchased the cocaine from someone named "Sonny."  Defendant argues the State failed to prove both that he possessed the drugs and that he had the intent to distribute the cocaine.  Accordingly, he alleges that there was insufficient evidence to sustain the convictions.

The first circuit, in *State v. Griffin*, 07-974, pp. 9-11 (La.App. 1 Cir. 2/8/08), 984 So.2d 97, 107-08, discussed possession of drugs and whether the evidence was sufficient to establish that the defendant had the specific intent to distribute crack cocaine, as follows:

> On the issue of whether the evidence sufficiently proved possession, the State is not required to show actual physical possession of the narcotics by a defendant in order to convict.  *See State v. Trahan*, 425 So.2d 1222, 1226 (La.1983).  Constructive possession is sufficient.  A person is considered to be in constructive possession of a controlled dangerous substance if it is subject to his dominion and control, regardless of whether it is in his physical possession.  *Id.*  However, the mere presence in the area where narcotics are discovered or mere association with the person who does control the drug or the area where it is located is insufficient to support a finding of constructive possession.  *See State v. Harris*, 94-0970, p. 4 (La.12/8/94), 647 So.2d 337, 338 (*per curiam*).

> A determination of whether there is "possession" sufficient to convict depends on the peculiar facts of each case. *State v. Gordon*, 93-1922, p. 9 (La.App. 1st Cir.11/10/94), 646 So.2d 995, 1002.  Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. *State v. Toups*, 2001-1875, p. 4 (La.10/15/02), 833 So.2d 910, 913.

11

Guilty knowledge is an essential element of the crime of possession of cocaine. However, since knowledge is a state of mind, it need not be proven as fact, but rather, may be inferred from the circumstances. *State v. Major*, 2003-3522, pp. 8-9 (La.12/1/04), 888 So.2d 798, 803. Herein, the defendant does not contest his possession of the cocaine. However, the defendant does contest the knowledge element of the offense.

. . . .

As to the evidence of defendant's intent to distribute crack cocaine, it is well settled that intent to distribute may be inferred from the circumstances. [*State v.*] *Hearold*, 603 So.2d [731] at 735 [(La.1992)]. Factors useful in determining whether the State's circumstantial evidence is sufficient to prove intent to distribute include: (1) whether the defendant ever distributed or attempted to distribute illegal drugs; (2) whether the drug was in a form usually associated with distribution; (3) whether the amount was such to create a presumption of intent to distribute; (4) expert or other testimony that the amount found in the defendant's actual or constructive possession was inconsistent with personal use; and (5) the presence of other paraphernalia evidencing intent to distribute. *State v. House*, 325 So.2d 222, 225 (La.1975).

In the absence of circumstances from which an intent to distribute may be inferred, mere possession of illegal drugs is not evidence of intent to distribute unless the quantity is so large that no other inference is reasonable. *See State v. Greenway*, 422 So.2d 1146, 1148 (La.1982).

In the instant case, we find the evidence was sufficient to establish constructive possession of the drugs by Defendant. It is true, as noted above, that simply being present in the area where narcotics are discovered does not necessarily support a finding of constructive possession. However, when Defendant saw the police exit their vehicle in front of the house, he rushed back to the bedroom. As the police began searching the house, Defendant came out of the bedroom, closing the door behind him, and claimed that there was a vicious dog inside the room. He told the police not to enter. The dog, however, was seemingly more afraid of the police than they were of it, as the dog remained under the bed the entire time they were searching the room. The exaggeration of the dog's ferociousness in an apparent attempt to keep the police out of the room could have

convinced the jury that Defendant knew the drugs were there, thus evidencing his guilty state of mind.

Defendant's nephew, Anthony Ferrell, testified that the cocaine was his and that he had left the cocaine in two baggies on the floor behind the gas heater to await his return from prison. According to Mr. Ferrell's testimony, he went to prison in 2013. At Defendant's trial in 2015, Mr. Ferrell testified that he had two and a half years more prison time to serve. The jury could easily have found it hard to believe that someone would stash twenty-five hundred ($2,500.00) dollars of crack cocaine loosely in two baggies behind a heater, knowing that he would not return to that room for at least five years. Obviously, the jury chose not to believe Mr. Ferrell's testimony. "It is the role of the factfinder to weigh the respective credibility of the witness, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficient evaluations under the *Jackson* standard of review." *State v. Johnson*, 01-1084, p. 3 (La.App. 3 Cir. 2/6/02), 817 So.2d 120, 123. *See also State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983).

Further, even if the drugs did belong to Mr. Ferrell prior to his being incarcerated, someone still sold Ms. Howard crack cocaine the day before from that location, and it was not Mr. Ferrell. If this was the case, it appears that Defendant was aware of the cocaine and commenced selling it, thereby taking dominion and control of the drug. It is well established jurisprudence that a person can have constructive possession if he jointly possesses drugs with another and if he willfully and knowingly shares with his partner the right to control the drugs. *State v. Henry*, 08-658 (La.App. 5 Cir. 10/27/09), 27 So.3d 935, *writ denied*, 09-2485 (La. 4/23/10), 34 So.3d 269.

13

We also find that the evidence was sufficient to establish that Defendant possessed the cocaine with intent to distribute. Captain Larry Coutee testified as an expert in crack cocaine manufacturing, packaging, and distribution. Captain Coutee testified that the street value of the crack cocaine found in Defendant's possession was around twenty-five hundred ($2,500.00) dollars. He further stated that in most cases, someone who was only using cocaine could not afford to purchase that much cocaine at one time. Captain Coutee explained that crack cocaine is cooked and comes out as rocks, which are broken up into small pieces and sold for around twenty ($20.00) dollars apiece. The fact that Defendant had over two thousand four hundred ($2,400.00) dollars in his pocket, mostly all twenty ($20.00) dollar bills, also indicated that he was dealing rather than keeping all of the drug for personal use; and, Detective Andrus testified there was no evidence that Defendant was employed at the time of his arrest. Furthermore, if Defendant possessed the drug for personal use, there should have been some drug paraphernalia, such as a pipe from which to smoke the drug, and no pipe or any other smoking paraphernalia were found. Finally, as previously noted above, Defendant had a history of selling crack cocaine from that address.

With regard to the hydrocodone, Defendant argues in brief that the evidence was insufficient to establish that he possessed hydrocodone with intent to distribute; however, Defendant was found guilty only of illegal possession of the hydrocodone pills. Though there was no clear evidence he was distributing the drug, Defendant produced no evidence that he had a valid prescription for the drug. Whereas the jury had sufficient reason to conclude that Defendant was in the business of selling crack cocaine, and the pills were found hidden with the cocaine, it was reasonable for the jury to conclude that Defendant illegally possessed the pills.

14

Considering the evidence in a light most favorable to the prosecution as we are compelled to do, we find that the evidence was sufficient for the jury to find Defendant guilty of possession of the crack cocaine with intent to distribute and guilty of illegal possession of the hydrocodone pills. Accordingly, there is no merit to this assignment of error.

**ATTORNEY ASSIGNMENT OF ERROR NUMBER TWO**

Defendant contends that the trial court erred when it allowed Alex King, the forensic chemist who testified regarding the drugs submitted for testing, to identify the pills found in a pill bottle labeled "Alprazolam" as hydrocodone with a non-narcotic ingredient by visual inspection only. Defendant argues that while visual inspection of a drug such as pills has been held to be sufficient, testimony alone without other corroborating evidence, whether direct or circumstantial, was not sufficient.

In *State v. Smith*, 12-2358, pp. 4-6 (La. 12/10/13), 130 So.3d 874, 877-78 (emphasis added), our supreme court held:

> Substantial jurisprudence exists, in fact, for the proposition that a contraband drug may be identified by circumstantial evidence as well as direct testimony with respect to scientific tests conducted on the substance. *See*, e.g., *United States v. Eakes*, 783 F.2d 499, 505 (5th Cir.1986) (Such circumstantial proof may include " ' "evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence." ' ") (quoting *United States v. Scott*, 725 F.2d 43, 45-46 (4th Cir.1984) (quoting *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir.1976))); *State v. Harris*, 02-1589, p. 6 (La.5/20/03), 846 So.2d 709, 713-14 ("**The federal courts subscribe generally to the view that the 'government need not introduce scientific evidence to prove the identity of a substance . . . as long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt**,

15

the lack of scientific evidence does not warrant reversal.' Identification of a controlled substance does not require direct evidence if available circumstantial evidence established its identity beyond a reasonable doubt. . . . Identification based upon familiarity through law enforcement coupled with present observation of the substance at hand will suffice to establish the illicit nature of a suspected substance.") (quoting *United States v. Harrell*, 737 F.2d 971, 978 (11th Cir.1984) (other citations omitted)); *State v. Chatman*, 599 So.2d 335, 347 (La.App. 1 Cir.1992) ("As long as there is sufficient lay testimony or circumstantial evidence from which a jury could find beyond a reasonable doubt that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal.") (citing *United States v. Sanchez DeFundora*, 893 F.2d 1173, 1175 (10th Cir.1990)).

At trial, Mr. King testified that "the pharmaceutical tablets in this case are items A, B and G, and those items were visually characterized pharmaceutical preparations containing hydrocodone with a non-narcotic ingredient[,] which is a Schedule III in Louisiana at that time." He further explained:

If they look like – if they are pharmaceutical tablets and they don't look like they've been messed with in any way – the markings are intact on them. The shape and size of the tablets are intact. Sometimes if the tablets come in contact with bodily fluids or moisture you'll lose that so we'll have to do a more in depth analysis. That wasn't the case on this evidence. So when the pharmaceutical tablets that come from a legitimate manufacturer and dispensed by a pharmacy, we just do a visual examination on those. We use a reference library that's used nationwide by law enforcement. So we do have paperwork to back up that visual examination. But that's all that's necessary for that type of evidence.

In a fifth circuit case, *State v. Murphy*, 09-432 (La.App. 5 Cir. 11/24/09), 28 So.3d 496, *writ denied*, 10-16 (La. 6/25/10), 38 So.3d 334, several pills were discovered in defendant's shoe. At trial, a forensic chemist testified that upon visual inspection he determined, using reference material as in the present case, that the pills were a Schedule IV drug. The arresting officer also testified that he identified the pills using a reference book which described various narcotics and showed pictures of the pills. The fifth circuit determined that despite the lack of scientific evidence, the expert's visual examination and testimony, together with

the officer's testimony, was sufficient. In *Murphy*, the fifth circuit referred to a third circuit case, *State v. Carter*, 07-1237 (La.App. 3 Cir. 4/9/08), 981 So.2d 734, *writ denied*, 08-1083 (La. 1/9/09), 998 So.2d 712, that discussed visual inspection of a pill suspected of being hydrocodone, as follows:

> Even without the benefit of direct scientific evidence, we find that the expert testimony of Mr. Waguespack was sufficient to show the pills contained clonazepam. The Louisiana Supreme Court has adopted the view of the federal courts that the " 'government need not introduce scientific evidence to prove the identity of a substance . . . as long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal.' " *State v. Harris*, 02-1589, p. 6 (La.5/20/03), 846 So.2d 709, 713 (quoting *United States v. Sanchez DeFundora*, 893 F.2d 1173, 1175 (10th Cir.1990), *cert. denied*, 495 U.S. 939, 110 S.Ct. 2190, 109 L.Ed.2d 518 (1990)). The supreme court further found, "[i]dentification based upon familiarity through law enforcement coupled with present observation of the substance at hand will suffice to establish the illicit nature of a suspected substance." *Harris*, 02-1589 at 6, 846 So.2d at 714 (citing *United States v. Harrell*, 737 F.2d 971, 978-79 (11th Cir.1984)).
>
> Further, in a case factually similar to the instant matter, the Third Circuit found the evidence at trial was sufficient to support the defendant's conviction for possession with intent to distribute hydrocodone. *State v. Carter*, 07-1237 (La.App. 3 Cir. 4/9/08), 981 So.2d 734, *writ denied*, 08-1083 (La.1/9/09), 998 So.2d 712. In that case, officers recovered pills from under the back seat of a police car after the defendant exited the vehicle. *Id.*, 07-1237 at 14, 981 So.2d at 743. At trial, an expert in forensic chemistry testified that the pills contained hydrocodone. He stated he had not performed chemical analysis on the pills, but had identified them by visual inspection and comparison to pictures in a book. *Id.*, 07-1237 at 14, 981 So.2d at 744. Additionally, a police officer testified he had seen similar pills in the past in connection with his job, and that the pills at issue were hydrocodone pills. *Id.* Relying in part on *State v. Harris*, the Third Circuit found there was sufficient lay and expert testimony from which the jury could find beyond a reasonable doubt that the pills at issue were hydrocodone. *Carter*, 07-1237 at 16, 981 So.2d at 745.

*Murphy*, 28 So.3d at 499-500.

In the instant case, as in *Murphy* and *Carter*, while not exactly testifying that he was the one who initially identified the pills, when asked how he concluded that

17

the pills were hydrocodone after they were discovered in Defendant's room, Detective Andrus answered:

> Generally[,] someone on scene takes their phone and you can Google a description of the pill and it will show results in there. And when you click on it, it will give you an actual picture of the pill that you're Googling and you can visually identify to match. And it will tell you what schedule that pill is.

Detective Andrus testified that he had been in law enforcement for more than twelve years, six years with the Metro Narcotic Unit. He further testified that he had received extensive training in narcotics investigations and field testing of drugs. Mr. King testified he had been with North Louisiana Criminalistics Laboratory for fifteen years and had qualified as an expert in drug analysis in several district courts in Louisiana.

Based on the expert testimony of Mr. King, together with Detective Andrus' testimony, we find that the evidence was sufficient for the jury to conclude that the pills seized from Defendant's house were hydrocodone. Accordingly, we find that the trial court did not err in allowing the admission of the evidence. Thus, there is no merit to this assignment of error.

**ATTORNEY ASSIGNMENT OF ERROR NUMBER THREE**

Defendant argues that the mandatory minimum sentence of twenty years without the benefit of parole constituted cruel and unusual punishment and was constitutionally excessive.

Defendant was convicted of possession of a controlled dangerous substance, Schedule II, with intent to distribute. Louisiana Revised Statutes 40:967(B)(4)(b) provides for a range of imprisonment "at hard labor for not less than two years not more than thirty years, with the first two years of said sentence being without benefit of parole[.]" Defendant was sentenced, however, under the Habitual Offender Law. The applicable habitual offender provision for a third felony

offender provides: "The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence proscribed for the first conviction[.]" La.R.S. 15:529.1(A)(3)(a). Defendant was sentenced to twenty years at hard labor, the mandatory minimum sentence.

> Article 1, § 20 of the Louisiana Constitution of 1974, prohibits "cruel, excessive, or unusual punishment." A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. *State v. Sepulvado*, 367 So.2d 762 (La.1979); *State v. Naquin*, 527 So.2d 601 (La.App. 3 Cir.1988). To constitute an excessive sentence this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981); *State v. Everett*, 530 So.2d 615 (La.App. 3 Cir.1988), *writ denied*, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within the statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. *State v. Howard*, 414 So.2d 1210 (La.1982).

*State v. Walker*, 96-112, pp. 3-4 (La.App. 3 Cir. 6/5/96), 677 So.2d 532, 534-35, *writ denied*, 96-1767 (La. 12/6/96), 684 So.2d 924.

> A trial court must look at the particular circumstances of the case and the defendant's background in order to impose a sentence that is suited for him. On review, the issue is not whether another sentence would have been more appropriate; rather, it is whether the trial court abused its discretion.

*State v. Beverly*, 03-1348, p. 2 (La.App. 3 Cir. 3/3/04), 867 So.2d 107, 110 (footnotes omitted).

> Mandatory minimum sentences imposed on multiple offenders under the Habitual Offender Law are presumed to be constitutional, and a defendant bears the burden of rebutting that presumption. *State v. Ladd*, 13-1663, p. 3 (La.App. 4 Cir. 7/2/14), 146 So.3d 642, 644, *vacated and remanded on other grounds*, 14-1611 (La. 3/27/15), 164 So.3d 184, (citing *State v. Johnson*, 97-1906, pp. 5-6 (La. 3/4/98), 709 So.2d 672, 675, and *State v. Short*, 96-2780, p. 8 (La.App. 4 Cir. 11/18/98), 725 So.2d 23, 27). To rebut the presumption that a mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that:

19

> [he] is exceptional, which in this context means that because of unusual circumstances, the defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

> *Id.* (quoting *State v. Lindsey*, 99-3302, p. 5 (La. 10/17/00), 770 So.2d 339, 343). "[D]epartures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." *Lindsey*, p. 5, 770 So.2d at 343 (quoting *Johnson*, 97-1906, p. 8, 709 So.2d at 677).

*State v. Hall*, 14-1046, p. 15 (La.App. 4 Cir. 5/15/15), 172 So.3d 61, 70.

In brief, Defendant's total argument consists of an assertion that his twenty year sentence and his five year sentence are "constitutionally excessive as they make no contribution to acceptable goals of punishment and are nothing more than the purposeless imposition of pain and suffering and are grossly out of proportion to the severity of the crime." Defendant does not explain how the mandatory sentence is excessive in his case or in what way he is exceptional or a victim of the legislature's failure to assign a sentence that is meaningful to his circumstance. Thus, Defendant has failed to meet his burden of proof. There is no merit to this assignment of error.

## PRO SE ASSIGNMENTS OF ERROR:

Defendant's pro se assignments of error do not correlate with his argument, which is one long, somewhat rambling dissertation of the injustice imposed on him, including discrimination based on race. We categorize Defendant's seven pro se assignments of error into five specific errors as follows: 1) Defendant was denied a preliminary hearing; 2) Defendant's speedy trial rights were violated pursuant to La.Code Crim.P. arts. 578 and 701; 3) the State failed to negate any reasonable probability of misidentification; 4) the search warrant was insufficient;

20

therefore, the evidence should have been suppressed; and, 5) prosecutorial misconduct.

## PRO SE ASSIGNMENT OF ERROR NUMBER ONE[3]

Defendant argues he was not given a preliminary hearing; therefore, he was denied the right to prepare a defense. He contends that he could have questioned the witnesses and established impeachment evidence and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963) evidence. However, in *State v. Lewis*, 09-350, pp. 4-5 (La.App. 4 Cir. 12/16/09), 28 So.3d 548, 552, *writ denied*, 10-129 (La. 9/3/10), 44 So.3d 697 (footnote omitted), the fourth circuit noted:

> While a preliminary examination can act as a discovery technique, the law does not treat it as such. The primary function of a preliminary examination is to determine whether probable cause exists to hold the defendant for the charged offense or a lesser included one. *State v. Mayberry*, 457 So.2d 880 (La.App. 3 Cir. 10/10/84).

> The State need only present a prima facie case. If the evidence does not support probable cause, the court must order the defendant's release from custody or bail. This is not a judicial dismissal of the case and the State may still proceed against the defendant. As noted in *State v. Sterling*, 376 So.2d 103 (La.1979):

>> [A] preliminary examination does not determine the validity of the charge brought against a defendant, but rather determines whether or not there is probable cause to deprive the defendant of his liberty. See *State v. Jenkins*, 338 So.2d 276 (La.1976).

> *Id.*, 376 So.2d at 104.

> A conviction renders moot any claim of an improper denial of a preliminary examination. *State v. Jackson*, 2001-1268 (La.App. 4 Cir. 2/6/02), 809 So.2d 1127 citing *State v. Washington*, 363 So.2d 509 (La.1978) and *State v. Mayberry*, 457 So.2d 880 (La.App. 3 Cir.1984).

In the instant case, Defendant has been convicted. Therefore, the matter is moot. Furthermore, Defendant's motion to suppress the evidence was heard on

---

[3]Note that Defendant's seven assignments of error have been re-designated as assignments of error one through five as set forth above.

October 30, 2015, and Detective Andrus testified regarding whether there existed sufficient probable cause to issue the search warrant. Detective Andrus was thoroughly cross-examined, and Defendant had his opportunity to establish impeachment evidence and *Brady* material. Accordingly, there is no merit to this assignment of error.

**PRO SE ASSIGNMENT OF ERROR NUMBER TWO**

On September 23, 2013, Defendant filed a Motion to Quash Bill of Information wherein he alleged La.Code Crim.P. art. 701(B)(1)(a) required that a bill of information be filed within sixty days of his arrest. Defendant was arrested on May 3, 2013, and the bill of information was not filed until October 24, 2013. He argued that La.Code Crim.P. art. 532(7) required that the indictment be quashed because he had not been brought to trial in a timely manner. On the same date, Defendant filed a Motion for Dismissal of Prosecution, alleging that the search warrant was invalid and illegal. Hearings were scheduled to address all three motions.

At the hearing on the Motion to Quash the Bill of Information, following testimony, submission of documents, and arguments, the trial court ruled that Defendant's allegation of a 701 violation was moot. In *State v. Gordon*, 04-633, p. 12 (La.App. 1 Cir. 10/29/04), 896 So.2d 1053, 1062-63, *writ denied*, 04-3144 (La. 4/1/05), 897 So.2d 600, the first circuit explained why in the current case, Defendant's motion was moot pre-trial, is moot now, and quashing the indictment was not the correct remedy in either case:

> Louisiana Code of Criminal Procedure article 701, which provides the statutory right to a speedy trial, merely authorizes pre-trial relief. The remedy for a speedy trial violation under article 701 is limited to release from incarceration without bail or release of the bail obligation for one not incarcerated. Once a defendant has been convicted, any allegation of a violation is moot. *See State v. Kelly*, 92-2446, p. 18 (La.App. 4th Cir.7/8/94), 639 So.2d 888, 896, *writ*

22

*denied*, 94-2087 (La.1/6/95), 648 So.2d 921; *State v. Cowger*, 581 So.2d 283, 286 (La.App. 5th Cir.1991). Therefore, the trial court properly denied defendant's motions to quash and supplements insofar as they were based upon a violation of article 701.

In addition to the limitations provided for by article 701, LSA-C.Cr.P. art. 578(2) provides for a two-year time limitation (from the date of institution of the prosecution) within which the trial of a defendant accused of a non-capital felony must be commenced. The defendant was charged on March 27, 2003, for an offense committed on February 4, 2002. Prior to the defendant's August 28, 2003 nolo contendere plea, the trial court set the defendant's trial for September of 2003, well within the time limitation. Thus, to the extent that defendant's motions were based on article 578(2), they were properly denied by the trial court.

Defendant was incarcerated in May 2013. The bill of information was filed October 24, 2013. While it is true that La.Code Crim.P. art. 701(B)(1)(a) provides that an indictment or bill of information must be filed within sixty days of the defendant's arrest when he is in custody, the remedy for the failure to do so is being released from custody or from the bail obligation. However, in the instant case, once the bill of information was filed in October, that remedy was no longer available. Additionally, once the bill of information was filed on October 23, 2013, the State had two years from the date of the institution of the prosecution to commence trial. Institution of prosecution commences upon the filing of an indictment or a bill of information. *State v. Cotton*, 01-1781 (La.App. 1 Cir. 5/10/02), 818 So.2d 968, *writ denied*, 02-1476 (La. 12/13/02), 831 So.2d 982. Accordingly, the State had until October 2015 to bring Defendant to trial. La.Code Crim.P. art. 578(2). Defendant's trial commenced in August 2015, two months before the deadline to commence trial.

While Defendant claims his right to a speedy trial was violated, he did not file a motion for a speedy trial pursuant to La.Code Crim.P. art. 701(D). Thus, there is no merit to this assignment of error.

23

## PRO SE ASSIGNMENT OF ERROR NUMBER THREE

Defendant asserts that "[i]n cases involving a defendant's claim that he wasn't the person who committed the crime[,] [*Jackson v. Virginia*], the [S]tate is required to negate any reasonable probability of misidentification[.]" Defendant cites *State v. Robinson*, 02-530 (La.App. 5 Cir. 10/29/02), 831 So.2d 460, *writ denied*, 03-100 (La. 2/13/04), 867 So.2d 676, to support his position that he was not the person who sold the crack cocaine to Ms. Howard.

However, this is not a matter of a "misidentification." In *Robinson*, the witness testified that the defendant was the man who approached her vehicle, offered to sell her drugs, took her money, and gave her the drugs. She had described his clothing and included that fact that he had missing teeth in the front of his mouth. The defendant, however, alleged on appeal that the State had failed to negate the reasonable probability that she misidentified him. The fifth circuit determined that the defendant was not misidentified.

In the instant case, while it was true that the person to whom he sold the drugs did not testify at trial or otherwise identify Defendant as "Sunny," this was not a matter of a witness identifying one person when there was the possibility it was some other person whom the witness saw. The issue of Defendant's identity was resolved by circumstantial evidence wherein it was determined that the evidence was sufficient, including the element of who sold Ms. Howard the drug. The jury heard the evidence and arguments and concluded that Defendant was the one who possessed the crack cocaine and sold the drug to Ms. Howard. There is no merit to this assignment of error.

## PRO SE ASSIGNMENT OF ERROR NUMBER FOUR

Defendant also filed a Motion to Suppress Evidence 703 wherein he asserted that the evidence should be suppressed because the search warrant was invalid.

24

Following the admission of the search warrant and affidavit into evidence, and the testimony of Detective Andrus, the trial court denied the motion to suppress the evidence.

Defendant argues that the search warrant was invalid because it lacked sufficient information to establish probable cause. Detective Andrus stated in his affidavit:

> On 4-30-2013[,] your Affiant[,] Detective Andrus[,] arrested Ms. Belinda Mills[4] with approx [sic] three grams of crack cocaine. During a post arrest interview[,] Ms. Mills told Detective Andrus she would like to corporate [sic] with officers. Ms. Mills then rode with Detective Andrus, Cappel, Belgard, and Parker to Mason St. in Alexandria where she identified the residence believed to be located at 2108 Mason St. as where she purchased her crack cocaine from. Ms. Mills told Detective Andrus she purchased this crack cocaine from this residence within twenty four hours of pointing the residence out. Ms. Mill[s] also told Detective Andrus she knows the B/M who sold her the crack cocaine from this residence as "Sunny".

The proper standard of review for examining mixed questions of fact and law on a motion to suppress is abuse of discretion. In *State v. Everett*, 11-1311, pp. 2-3 (La.App. 3 Cir. 5/9/12), 89 So.3d 463, 466, this court quoted *State v. Bargeman*, 98-617, p. 5 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, 967, *writ denied*, 99-33 (La. 5/28/99), 743 So.2d 658, as follows:

> When a trial court rules on a defendant's motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion.

Furthermore, the defendant bears the burden of proving the inadmissibility of evidence seized with a warrant. La.Code Crim.P. art. 703(D). In *State v. Friday*, 10-2309, pp. 5-6 (La.App. 1 Cir. 6/17/11), 73 So.3d 913, 920, *writ denied*, 11-1456

---

[4]"Ms. Belinda Mills" and "Ms. Mills" referred to in this affidavit are the same person as Ms. Belinda Mills Howard referred to throughout this opinion.

(La. 4/20/12), 85 So.3d 1258, the first circuit discussed the factors pertinent for reviewing claims that a search warrant application failed to state probable cause, as follows:

> Article 1, § 5 of the Louisiana Constitution requires that a search warrant issue only upon an affidavit establishing probable cause to the satisfaction of an impartial magistrate. *See also* La.Code Crim. P. art. 162. Probable cause exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. *State v. Johnson*, 408 So.2d 1280, 1283 (La.1982). The facts establishing the existence of probable cause for the warrant must be contained within the four corners of the affidavit. *State v. Duncan*, 420 So.2d 1105, 1108 (La.1982); *State v. Green*, 2002-1022, pp. 6-7 (La.12/4/02), 831 So.2d 962, 968.
>
> An issuing magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a "fair probability" that evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *State v. Byrd*, 568 So.2d 554, 559 (La.1990). The process of determining probable cause for the issuance of a search warrant does not involve certainties or proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior, as understood by persons trained in law enforcement and as based on the totality of circumstances. The process simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system. *See State v. Rodrigue*, 437 So.2d 830, 832-33 (La.1983).
>
> The review of a magistrate's determination of probable cause prior to issuing a warrant is entitled to significant deference by reviewing courts. "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. Further, because of "the preference to be accorded to warrants," marginal cases should be resolved in favor of a finding that the issuing magistrate's judgment was reasonable. *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

In *State v. Cortes*, 11-794, pp. 13-14 (La.App. 3 Cir. 2/1/12), 84 So.3d 733, 742, this court quoted *State v. Williams*, 04-1309, pp. 21-22 (La.App. 5 Cir. 4/26/05), 902 So.2d 485, 499, *writs denied*, 05-1640 (La. 2/3/06), 922 So.2d 1173,

26

924 So.2d 144, as follows: "'In determining whether the ruling on a motion to suppress was correct, the court is not limited to the evidence adduced at the hearing on the motion, but may consider all pertinent evidence given at the trial of the case.'"

We find that Detective Andrus' affidavit was sufficient for the judge signing the warrant to determine there was a "fair probability" that illegal drugs were sold from the stated location. Detective Andrus testified at the suppression hearing, and his narrative was the same as the information that was given to the judge signing the warrant. While at trial, there was no identification of Defendant as "Sunny" (the one who Ms. Howard reportedly said sold her the drug), the judge was given a name, a location, and the items sought; and, the items sought were located at that location.

Moreover, in brief, Defendant points out that Ms. Howard's reliability was not established in the affidavit, and that at trial, it was brought out that Ms. Howard had a lengthy criminal history, therein casting doubt on her reliability. At trial, physical evidence established that the pill bottle containing the hydrocodone found next to the cocaine in Defendant's bedroom was prescribed to Ms. Howard, evidencing she was obviously in that house at some point.

We find the relevant information given to the judge who issued the search warrant was sufficient, and the trial court did not abuse its discretion when it ruled that the search warrant was valid. There is no merit to this assignment of error.

**PRO SE ASSIGNMENT OF ERROR NUMBER FIVE**

In this assignment of error, Defendant argues prosecutorial misconduct. Defendant asserts that Detective Andrus lied and that the State encouraged him to lie. He asserts that the judge who signed the search warrant "abandoned his neutral and detached role[.]" He asserts that he was discriminated against because he is

27

black, and the police are white. He asserts that "the prosecutor improperly introduce[d] illegal[] evidence, assassinated the character of the accuse[d] and the prosecution made inflammatory statements before and during closing arguments calling the accuse[d] a 'nigger' in front of the jury and no one did anything to stop this assassination by prosecution[.]"

As noted above, Defendant filed a Motion for Mistrial following the conviction, wherein he claimed that the prosecutor asked the jury, "[A]re you going to believe a nigger in jail[?]" At the habitual offender hearing, Defendant again raised this allegation. The trial judge noted that she did not hear that statement, and, if she had, she would have granted a mistrial on the spot. Defense counsel stated that he may have missed hearing the prosecutor make such a remark and, for that reason, did not object.

At the hearing on the mistrial motion, the trial court denied the motion, stating emphatically that she heard no such statement during closing argument and that defense counsel must not have heard it because he did not object; therefore, the issue was not preserved on appeal. Louisiana Code of Criminal Procedure Article 841, in pertinent part, provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." We find that the trial court was correct in its ruling. Finally, a review of the transcript of the State's closing argument shows there was no such remark made, and Defendant makes no reference in his brief to where in the record this alleged statement was made.

As for the remaining allegations in Defendant's brief of wrongdoing by the State, the police, and the trial court, the accusations are conclusory, unsubstantiated, not found in the record, and thus, neither establish nor warrant relief.

28

## DISPOSITION

We affirm Defendant's convictions and sentences, but amend Defendant's sentence for possession with the intent to distribute cocaine to require only the first two years to be served without the benefit of parole. We instruct the trial court to make an entry in the court minutes reflecting this change. Additionally, we direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within fifteen days of the rendition of this opinion and to file written proof in the record that said notice was given.

**CONVICTIONS AFFIRMED.**
**SENTENCES AFFIRMED AS AMENDED,**
**WITH INSTRUCTIONS.**