GARRETT, J.
JjThe defendant, Voltaire Sullivan, was convicted of three counts of distribution of cocaine and one count of distribution of methamphetamine. He was later adjudicated and sentenced as a habitual offender to serve 60 years at hard labor on each count, *179 to be served concurrently, without benefit of parole, probation, or suspension of sentence. He now appeals his convictions and sentences. For the following reasons, we affirm the convictions. We amend the sentences and affirm as amended.
FACTS
A confidential informant (“Cl”), working with the Minden Police Department, made three controlled purchases of illegal drugs from Sullivan. On May 24, 2013, the Cl purchased cocaine and what was originally thought to be Ecstasy (“MDMA”), but which was later determined to be methamphetamine. On May 28 and June 4, 2013, the Cl made more purchases of cocaine. Sullivan was arrested and charged by bill of information with three counts of distribution of cocaine and one count of distribution of MDMA, which was later amended to distribution of methamphetamine.
Sullivan was tried by a jury and, on March 25, 2015, was found guilty as charged on all four counts. Sullivan was originally sentenced on June 29, 2015. In December 2015, he was charged as a habitual offender. The bill of information alleged that Sullivan had four prior felony convictions, including possession of marijuana, third offense; distribution of cocaine; and two separate convictions for possession of cocaine. After a hearing, the trial court found Sullivan to be a fourth felony offender, vacated his prior sentences, and sentenced him to serve 60 years at hard labor, without benefit | aof parole, probation, or suspension of sentence, for each of his underlying convictions in this matter. The sentences were to be served concurrently.
Sullivan appealed, arguing that there was insufficient evidence to support his convictions, the trial court erred in allowing the state to amend the bill of information, and the 60-year hard labor sentences were constitutionally excessive for a nonviolent offender.
SUFFICIENCY OF THE EVIDENCE
Sullivan asserts the state failed to sufficiently prove he was guilty of distribution of narcotics. He claims that videos submitted by the state as evidence do not show that he distributed drugs. He also urges that the handling of the evidence by the police after each buy was questionable because the narcotics were stored in a police captain’s locker for months before being turned over to officials for testing. These arguments are without merit.

Legal Principles

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App. 2d Cir. 1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La. 2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App. 2d Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to the factfinder’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 *180 (La.App. 2d Cir. 2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913; State v. Hül, 42,025 (La.App. 2d Cir. 5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La. 12/14/07), 970 So.2d 529; State v. Randle, 49,952 (La.App. 2d Cir. 6/24/15), 166 So.3d 465; State v. Casaday, 49,679 (La.App. 2d Cir. 2/27/15), 162 So.3d 578, writ denied, 2015-0607 (La. 2/5/16), 186 So.3d 1162.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such eases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Speed, 43,786 (La.App. 2d Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La. 11/6/09), 21 So.3d 299; State v. Parker, 42,311 (La.App. 2d Cir. 8/15/07), 963 So.2d 497, writ denied, 2007-2053 (La. 3/7/08), 977 So.2d 896; State v. Randle, supra; State v. Robinson, 50,643 (La.App. 2d Cir. 6/22/16), 197 So.3d 717.
UThe testimony of a paid confidential informant goes to the weight of the evidence, not its sufficiency. See State v. Nelson, 46,915 (La.App. 2d Cir. 2/29/12), 86 So.3d 747.
To present sufficient evidence of distribution of a controlled dangerous substance (“CDS”), the state must prove the following elements: (1) delivery or physical transfer of the CDS to its intended recipient; (2) guilty knowledge of the CDS at the time of the transfer; and (3) the exact identity of the CDS. State v. Anderson, 46,724 (La.App. 2d Cir. 11/2/11), 78 So.3d 176.

Discussion

Captain Dan Weaver of the Minden Police Department testified as an expert in narcotics and undercover drug purchases. Weaver and Captain Marvin Garrett were in charge of investigating Sullivan, who was known to the officers. They met with a Cl who had been referred to them by a narcotics officer with another law enforcement agency. Weaver and Garrett determined that the Cl could buy drugs from Sullivan.
On May 24, 2013, the Cl and his vehicle were searched to establish that the Cl did not have any drugs or money with him. He was given $500 with which to make a drug purchase, was outfitted with video surveillance equipment, and was instructed to come straight back to the officers after completing the transaction. A video of the transaction that occurred that day was played for the jury. It shows the Cl driving up to a location, walking up to a house, going inside, and discussing drugs with Sullivan. The Cl returned to the officers with $250 in cocaine and some pills because Sullivan did not have $500 in cocaine.
|BOn May 28, 2013, the officers followed the same procedure of searching the Cl and his vehicle, and outfitting him with video surveillance equipment. The second recording, which was played for the jury, shows the Cl meeting with Weaver and Garrett and being given $500 in cash and instructed to buy cocaine from Sullivan. The Cl called Sullivan, who said he had cocaine for sale. The Cl drove to Sullivan’s house, where he was let into the house by Sullivan, and a quick transaction occurred. The Cl returned to his vehicle and showed on camera the drugs purchased from the *181 defendant. The Cl then drove back to Weaver and Garrett and turned the drugs over to them.
On June 4, 2013, the same procedure was followed, and the Cl again purchased cocaine from Sullivan. The video of that transaction was played for the jury. The third recording shows the Cl being given $500 by Weaver and Garrett to purchase cocaine from Sullivan. The recording shows the Cl going up to the same house and being let in by Sullivan. Another quick transaction occurred and the Cl prepared to leave the house. He conversed with Sullivan briefly and Sullivan made comments about the quantity of drug business he engaged in. The Cl showed the cocaine on camera, returned to Weaver and Garrett, and turned the drugs over to them.
At trial, Weaver identified the drugs purchased by the Cl. He stated that the drugs were locked in a file cabinet in his office from the date of the transactions until early August 2013. He said that he had the only key. Weaver kept the drugs locked in his office to protect the identity of the Cl and to allow the Cl to make several purchases before his identity was revealed by court proceedings. Weaver testified that officers try to get several buys from one suspect during an investigation. After that point, the | (¡drugs were turned over to Lieutenant Ronald Payton, the evidence supervisor with the Minden Police Department. Payton testified that he received the drugs from Weaver on August 6, 2013, and transported them to the North Louisiana Criminalistics Laboratory on August 8, 2013, where they were received and logged in by Carla Pettis. She testified that she received the drugs from Payton.
The drugs were analyzed by Alana Brauer of the North Louisiana Criminalis-tics Laboratory, who testified at trial that they were cocaine and methamphetamine, not MDMA.
The Cl testified that he volunteered to make undercover drug purchases, and a friend placed him in contact with Weaver and Garrett. He was paid $300 for his participation in each transaction and did not act as a Cl in order to receive a reduction or dismissal of any criminal charges. He admitted to having prior convictions for possession of a Schedule II CDS and disturbing the peace. The Cl testified that he viewed the videos shown in court and he was depicted in the recordings. He identified Sullivan in the courtroom and testified he was the person who sold drugs to him on the videos. The Cl said he specifically tried to show the drugs on the video,
The evidence presented at trial was sufficient to prove that Sullivan distributed cocaine and methamphetamine, as charged in the bill of information. Captain Weaver testified regarding the participation of the Cl in the process, including searching the Cl and his vehicle prior to the transactions, outfitting him with surveillance equipment, supplying him with money to purchase drugs, recording the transactions, and receiving and securing the drugs after the transactions. Even though Sullivan is not clearly shown transferring drugs on the video recordings, he is seen and heard on |7the recordings. The Cl positively identified Sullivan as the person who sold him the drugs.
Captain Weaver identified the drugs introduced into evidence as those purchased from Sullivan by the Cl. He also testified that he kept the drugs locked in a cabinet in his office until the investigation was concluded and then handed the drugs over to Payton.[1] The drugs were transferred to *182 the North Louisiana Criminalistics Laboratory for analysis. The record does not show that the evidence was mishandled or that the drags analyzed were not the same drags sold by Sullivan to the CI.
Brauer testified that the chemical analysis of the drags showed that they were cocaine and methamphetamine.
This evidence was sufficient to prove that Sullivan delivered the cocaine and methamphetamine at issue in this case to the CI, who was the intended recipient; he knew he was transferring CDS; and that the drugs were, in fact, cocaine and methamphetamine. The evidence submitted to the jury was sufficient to prove beyond a reasonable doubt that Sullivan was guilty as charged.
AMENDMENT OF BILL OF INFORMATION
Sullivan argues that the trial court erred in allowing the state to substantially amend the bill of information to change count four from distribution of a Schedule I CDS, namely, MDMA, to distribution of a Schedule II CDS, namely, methamphetamine. This argument is without merit.
| xLegal Principles
La. C. Cr. P. art. 488 states:
When there is a variance between the allegations of an indictment or bill of particulars which state the particulars of the offense, and the evidence offered in support thereof, the court may order the indictment or bill of particulars amended in respect to the variance, and then admit the evidence.
La. C. Cr. P. art. 489 provides, in pertinent part:
If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution.

Discussion

Sullivan was originally charged in count four of the bill of information with distribution of a Schedule I CDS, MDMA. Brauer from the North Louisiana Crimi-nalistics Laboratory testified that the pills purchased by the CI from Sullivan were actually methamphetamine. After a discussion in chambers, the state moved to amend the bill of information to charge Sullivan with distribution of a Schedule II CDS, methamphetamine, arguing that the amendment was proper under La. C. Cr. P. arts. 486-489, to conform the bill of information to the evidence adduced at trial. Sullivan’s counsel objected, but stated that the amendment did not in any way influence the strategy of how to defend the case. Sullivan’s counsel also noted that the amendment benefitted Sullivan because the sentencing range for distribution of methamphetamine was lower than that for distribution of MDMA. The attorney stated, “So with that I would want you to note my objection, but I don’t think I’m harmed and I do think that it’s an allowable change.”
[ 9The trial court noted that the amendment was not prejudicial to Sullivan and that he was aware from the beginning that he was accused of distribution of CDS in the form of pills. The court pointed out that, in light of the amendment, defense counsel did not ask for a continuance to *183 prepare and the amendment did not affect the defense of the charges. The court allowed the amendment. The jury was informed of the amendment before retiring for deliberations and was charged on the correct law.
Sullivan argues that the trial court erred in allowing the amendment because it was substantive and was a violation of his constitutional rights to be informed of the charges against him. He points out that he was originally charged with distribution of one type of CDS and the bill of information was amended to charge him with the distribution of another type of CDS, with a different penalty. He urges that the identity of the CDS is an essential element of the crime of distribution.
Sullivan contends that, under State v. Chaisson, 2011-1135 (La.App. 3d Cir. 6/6/12), 91 So.3d 1224, a court cannot simply fix the state’s failure to meet its burden of proof by amending a bill of information to make the evidence fit a crime. In Chaisson, the defendant was originally charged with distribution of hydrocodone under Schedule III. At trial, the state erroneously amended the bill of information to charge distribution of hydrocodone, Schedule II. As explained in Chaisson:
Hydrocodone is found in both Schedule II and Schedule III as defined in La. R.S. 40:964. Schedule II lists hydroco-done, and Schedule III lists hydroco-done when found in certain amounts and/or mixed with other nonnarcotic ingredients. The penalties for Schedule II and Schedule III violations involving hy-drocodone differ greatly.
|inThe expert from the crime lab who analyzed the drugs in Chaisson testified that they were a Schedule III CDS. The defendant was found guilty by a jury of distribution of Schedule II hydrocodone and argued on appeal that there was insufficient evidence to support a conviction for distribution of Schedule II hydrocodone. The third circuit agreed and reversed the conviction.
Chaisson is distinguishable from the facts here. In Chaisson, the defendant was convicted of distribution of Schedule II hydrocodone, when the evidence showed that she distributed Schedule III hydroco-done. The conviction and the amended bill of information were incongruous. In the present matter, the bill of information was properly amended at trial and the evidence supported the charge contained in the amended bill of information.
La. C. Cr. P. art 488 clearly contemplates the circumstances here, in which count four of the bill of information was based upon the belief that the pills sold to the Cl by Sullivan were MDMA, but the laboratory analysis and testimony at trial showed that they were methamphetamine. The trial court allowed an amendment to correct a variance between the bill of information and the evidence offered in support thereof. Under La. C. Cr. P. art. 489, Sullivan could have requested a continuance if he was prejudiced in his defense. Sullivan’s counsel did not request a continuance, specifically stated that the defense was not prejudiced by the amendment, and noted that the amendment actually bene-fitted Sullivan by reducing his potential sentence. Under these circumstances, the trial court did not err in allowing the amendment.
JyEXCESSIVE SENTENCES
Sullivan argues that the 60-year habitual offender sentences in this case are constitutionally excessive.[2] He contends that *184 the predicate offenses for his habitual offender adjudications were all nonviolent, that he has a drug addiction, and. that, because he is 37 years old, the sentences amount to life sentences for low-level drug sales. These arguments are without merit.

Legal Principles

A reviewing court imposes a two-prong test in determining whether a sentence is excessive. First, the record must show that the trial court took cognizance of the criteria set forth in La. C, Gr. P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects adequate consideration of the guidelines of the article. State v. Smith, 433 So.2d 688 (La. 1983); State v. Shipp, 46,715 (La.App. 2d Cir. 11/2/11), 78 So.3d 805. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal history, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. Mandigo, 48,801 (La.App. 2d Cir. 2/26/14), 136 So.3d 292, writ denied, 2014-0630 (La. 10/24/14), 151 So.3d 600. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jackson, 48,534 (La,App. 2d Cir. 1/15/14), 130 So.3d 993.
Second, a sentence violates La. Const. Art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a [ ^purposeless and needless infliction of pain and suffering. State v, Dorthey, 623 So.2d 1276 (La. 1993); State v, Mandigo, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La. 1/15/02), 805 So.2d 166; State v. Jackson, supra; State v. Hollins, 50,069 (La.App. 2d Cir. 8/12/15), 174 So.3d 710.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, a sentence will not be set aside as excessive. State v. Mandigo, supra. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Jackson, supra; State v. Hollins, supra.

Discussion

Following his convictions, Sullivan appeared before the trial court for sentencing. The trial court had ordered a presen-tence investigation (“PSI”) report and noted for the record the portions of Sullivan’s prior criminal history considered in sentencing. He had a 1996 conviction for possession of cocaine and was given a suspended sentence, but his probation was revoked. In 1997, Sullivan pled guilty to attempted possession of marijuana with intent to distribute. In 2000, Sullivan pled guilty to one count of distribution of cocaine. He served six years and was paroled, but his parole was revoked. In 2001, he pled guilty to possession of marijuana and possession of drug paraphernalia. Sullivan was convicted of possession of cocaine in 2008, and was sentenced to five years at hard labor. His parole was revoked. In June 2009, Sullivan was convicted of possession of marijuana, third offense, sentenced to six years at hard labor, and his parole h.qwas revoked. The court noted that, in the past, Sullivan had not responded favorably to probation or parole.
Regarding social history, the court noted that Sullivan was expelled from high school for possession of cocaine. Sullivan had never been married, but claimed to *185 have two children. One was no longer a minor. He had been ordered to pay child support for the younger child.
The trial court determined that any sentence less than that imposed would deprecate the seriousness of the offenses. On counts one and four, Sullivan was ordered to serve 15 years at hard labor, with the sentences to run concurrently. On counts two and three, Sullivan was ordered to serve 20 years at hard labor, with those sentences to be served concurrently with each other, but consecutively with counts one and four. On counts one, two, and three, the first two years of the sentences were to be served without benefit of parole, probation, or suspension of sentence.
On December 8, 2015, Sullivan was charged as a habitual offender. The bill of information noted that Sullivan had been convicted of three counts of distribution of cocaine and one count of distribution of methamphetamine in this matter. He also had prior convictions for possession of marijuana, third offense; possession of cocaine; distribution of cocaine; and another conviction for possession of cocaine. Sullivan appeared before the same trial court for a hearing on April 25, 2016. Based upon the evidence adduced, the trial court adjudicated him to be a fourth felony offender under La. R.S. 15:529.1(4)(a). Under that statute, his sentencing exposure was 30 years at hard labor to life imprisonment. His prior sentences were vacated.
| uThe trial court noted that Sullivan had a drug addiction, but had become a drug distributor. The court stated that Sullivan’s criminal history showed that he had been distributing drugs for almost 20 years. Sullivan was sentenced to serve 60 years at hard labor on all four counts, without benefit of parole, probation or suspension of sentence, with the sentences to be served concurrently.
On April 28, 2016, the trial court also filed written reasons for sentencing. The court noted that Sullivan was adjudicated a fourth felony offender. His latest conviction was actually a fifth felony offense and each conviction represented a serious felony. Sullivan’s criminal history included distribution convictions, which were more serious than possession convictions. The court noted Sullivan’s lengthy criminal history, which demonstrated a disrespect for the law and a lack of desire to reform.
Our review of the record discloses no abuse of the trial court’s discretion regarding the length of the sentences imposed. The sentences imposed were within statutory limits. The trial court considered the aggravating and mitigating circumstances, Sullivan’s personal history, the seriousness of the offenses, and the likelihood of rehabilitation. The record demonstrated that Sullivan has a lengthy criminal history involving drug offenses and distribution of drugs. He has been given numerous opportunities to reform and has failed to do so. The 60-year sentences are not out of proportion to the seriousness of the offenses. The trial court did not err in ordering Sullivan, as a habitual offender, to serve 60 years at hard labor for each of the offenses, to be served concurrently. The sentences do not shock the sense of justice.
J^ERROR PATENT
We note as error patent on the face of the record that the trial court erred in imposing the habitual offender sentences without benefit of parole.
Sullivan was convicted of three counts of distribution of cocaine. La. R.S. 40:967 provides, in pertinent part:
A. Except as authorized by this Part or by Part VII-B of Chapter 5 of Title 40 of the Louisiana Revised Statutes of *186 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To ... distribute. . a controlled dangerous substance or controlled substance analogue classified in Schedule IIC-]
B. Except as provided in Subsection F, any person who violates Subsection A with respect to:
(4)(b) Distribution, [of] cocaine or cocaine base or a mixture or substance containing cocaine or its analogues as provided in Schedule 11(A)(4) of R.S. 40:964... shall be sentenced to a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars.
Sullivan was also convicted of one count of distribution of methamphetamine. La. R.S. 40:967 provides in pertinent part:
B. Except as provided in Subsection F, any person who violates Subsection A with respect to:
(1) A substance classified in Schedule II which is ... methamphetamine ... shall be sentenced to a term of imprisonment at hard labor for not less than two years nor more than thirty years; and may, in addition, be sentenced to pay a fine of not more than fifty thousand dollars. Regarding sentencing as a habitual offender, La. R.S.
15:529.1(A)(4)(a) states:
A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within | tfithis state, upon conviction of said felony, shall be punished as follows:
(4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life[.]
La. R.S. 15:529.1(G) states that any sentence imposed under the habitual offender provisions shall be at hard labor without benefit of probation or suspension of sentence. Regarding the imposition of a habitual offender sentence without benefit of parole, the conditions imposed on the sentence are those called for in the sentencing provisions for the underlying offense. State v. Thurman, 46,391 (La.App. 2d Cir. 6/22/11), 71 So.3d 468, writ denied, 2011-1868 (La. 2/3/12), 79 So.3d 1025.
As observed in State v. Hampton, 50,561 (La.App. 2d Cir. 5/18/16), 195 So.3d 548:
Although La. R.S. 15:574.4(A)(1) states that “[a] person convicted of a third or subsequent felony offense shall not be eligible for parole,” the Louisiana Supreme Court has consistently held that, when a defendant is sentenced under a statute that contains no prohibition of parole, the district court must sentence the defendant to a term that does not include such a prohibition because parole eligibility under La. R.S. 15:574.4 is to be determined by the Department of Corrections. St. Amant v. 19th Judicial District Court, 94-0567 (La. 9/3/96), 678 So.2d 536. Defendant’s parole eligibility as a third or subsequent habitual offender under La. R.S. 15:574.4 is a determi *187 nation for the Department of Corrections to make.
For the distribution of cocaine convictions, as a habitual offender, the trial court could have sentenced Sullivan to 30 years to life imprisonment, with the first two years to be served without benefit of parole. For the distribution of methamphetamine conviction, the trial court could have | ^sentenced Sullivan to 30 years to life imprisonment. There is no requirement that any portion of the sentence for distribution of methamphetamine be served without benefit of parole. Sullivan was sentenced to serve 60 years at hard labor on all four convictions, with the entirety of the sentences to be served without benefit of parole, probation, or suspension of sentence. The trial court erred in ordering that the entire sentences be served without benefit of parole. We amend the sentences to provide that only the first two years of the 60-year sentences for distribution of cocaine be served without benefit of parole. Regarding the 60-year sentence for distribution of methamphetamine, we delete the requirement that the sentence be served without benefit of parole. As amended, the sentences are affirmed.
CONCLUSION
For the reasons stated above, we affirm the convictions of the defendant, Voltaire Sullivan, for three counts of distribution of cocaine and one count of distribution of methamphetamine, as well as his adjudication as a fourth felony offender. We affirm the length of the habitual offender sentences, to be served concurrently. We amend the sentences to provide that the first two years of the 60-year sentences for distribution of cocaine be served without benefit of parole. We delete the requirement that the 60-year sentence for distribution of methamphetamine be served without benefit of parole. As amended, the sentences are affirmed.
CONVICTIONS AFFIRMED. SENTENCES AMENDED AND AFFIRMED AS AMENDED.

. We note that Weaver’s procedure of locking CDS in his office has been followed in other *182 cases. See State v. Kennon, 50,511 (La.App. 2d Cir. 4/13/16), 194 So.3d 661.

. Sullivan argues in his assignment of error that the sentences were to be served consecutively. In fact, the sentences were ordered to be served concurrently.