# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 22-483


**STATE OF LOUISIANA**

**VERSUS**

**CASETTI DEWAYNE BROWN, JR.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 91528-AM-HAB
HONORABLE TONY ALAN BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Billy Howard Ezell and Sharon Darville Wilson, Judges.


**AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P.O. Box 6547**
**Lake Charles, LA 70606-6547**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT:**
**Casetti Dewayne Brown, Jr.**

**Terry Wayne Lambright**
**District Attorney**
**William R. Thornton**
**Assistant District Attorney**
**Vernon Parish**
**P.O. Box 1188**
**Leesville, LA 71446**
**(337) 239-2008**
**COUNSEL FOR:**
**State of Louisiana**

**Casetti Dewayne Brown, Jr.**
**Camp C Bear 4**
**Louisiana State Penitentiary**
**Angola, La 70712**

**EZELL, Judge.**

On September 6, 2017, Defendant, Casetti Dewayne Brown, Jr.,[1] was charged by bill of information with possession with the intent to distribute a schedule II, controlled dangerous substance (CDS II) (cocaine), in violation of La.R.S. 40:967(A)(1) and (A)(4)(b) (count one); possession of CDS II (methamphetamine), in violation of La.R.S. 40:967(C) (count two); illegal carrying of weapons in the presence of CDS, in violation of La.R.S. 14:95(E) (count three); and possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1 (count four). The charges had an offense date of June 9, 2017. Defendant pled not guilty to the charges.

On January 3, 2018, the State filed an amended bill of information. The State added four additional charges, all with October 31, 2017 offense dates: possession with intent to distribute CDS II (hydrocodone and oxycodone), in violation of La.R.S. 40:967(A)(1) and (B)(1)(a) (count five); possession with intent to distribute CDS II (cocaine), in violation of La.R.S. 40:967(A)(1) and (B)(1)(a) (count six); possession with intent to distribute CDS I (synthetic cannabinoids), in violation of La.R.S. 40:966(A)(1) and (B)(2)(a) (count seven); and possession with intent to distribute CDS I (marijuana), in violation of La.R.S. 40:966(A)(1) and (B)(2)(a) (count eight). Defendant pled not guilty to all eight counts.

On November 13, 2018, Defendant's trial began with jury selection. On November 16, 2018, the jury found Defendant guilty as charged on counts one,

---

[1] The bills of information incorrectly spelled Defendant's first name "Cassetti," but Defendant's first name, as reflected on his pro se brief, is actually spelled "Casetti." However, for consistency, we will spell Defendant's name correctly.

two, three, and four, but not guilty as to counts five and eight. The jury also convicted Defendant on counts six and seven by non-unanimous verdicts.

On January 10, 2019, the State filed a habitual offender bill of information. The State alleged Defendant was a third felony habitual offender regarding his conviction for possession of a weapon by a convicted felon (count four) and a fourth felony habitual offender for all other charges. The trial court held a habitual offender hearing on February 27, 2019, where it adduced evidence regarding his prior convictions. In its written ruling, the trial court adjudicated Defendant a third felony offender with respect to count four and a fourth offender with respect to the remaining charges.

On May 8, 2019, Defendant was sentenced as follows: count one, thirty-five years at hard labor without the benefit of probation or suspension of sentence; count two, twenty-five years at hard labor without the benefit of probation or suspension of sentence; count three, thirty-five years at hard labor without the benefit of parole, probation, or suspension of sentence; count four, thirty-five years at hard labor without the benefit of parole, probation, or suspension of sentence; count six, thirty-five years at hard labor without the benefit of probation or suspension of sentence; count seven, six months in the parish jail. The trial court ordered the first five sentences to be served consecutively to one another with the sentence for count seven to be served concurrently to count six. Accordingly, Defendant received an aggregate sentence of one hundred sixty-five years.

On June 4, 2019, Defendant filed a motion to reconsider sentence wherein he alleged his aggregate sentence was excessive due to the consecutive running of the individual sentences and for the trial court's failure to consider his age. The trial court denied the motion without written reasons.

Defendant appealed his convictions, habitual offender adjudication, and habitual offender sentences, asserting numerous assignments of error. *State v. Brown*, 19-682 (La.App. 3 Cir. 6/17/20), 299 So.3d 661, *writ denied*, 20-927 (La. 11/24/20), 305 So.3d 100, *writ denied*, 20-925 (La. 11/24/20), 305 So.3d 105. This court vacated Defendant's convictions and sentences on counts six and seven pursuant to *Ramos v. Louisiana*, 590 U.S. ___, 140 S.Ct. 1390 (2020). *Brown*, 299 So.3d 661. On counts one through four, this court affirmed Defendant's convictions but remanded the matter to the trial court for resentencing after finding the imposition of consecutive sentences rendered the sentences excessive. *Id*. The Louisiana Supreme Court denied writs from both the State and Defendant.

On May 25, 2021, the trial court held a resentencing hearing in accordance with this court's remand order. On counts one through three, Defendant was sentenced to eighty years at hard labor without the benefit of parole, probation, or suspension of sentence, and on count four, he was sentenced to forty years at hard labor without the benefit of parole, probation, or suspension of sentence. The trial court ordered the sentences be served concurrently. Defendant generally objected to the sentences.

Immediately following the pronouncement of Defendant's sentences, the trial court heard the State's motion to reconsider sentence and took the matter under advisement.[2] Additionally, Defendant filed a motion to reconsider sentence on June 24, 2021, in which he argued: (1) the imposed sentences violated *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072 (1969); and (2) the five-year

---

[2]The State filed a motion prior to resentencing entitled "State's Motion for Sentencing and Reconsideration of Sentence Pursuant to La.Code Crim.P. art. 881.1" on February 2, 2021. On April 19, 2021, the State filed another sentencing memorandum wherein it opined the trial court could comply with this court's opinion by first imposing concurrent sentences as ordered, and then, after considering the State's motion to reconsider, the trial court could again impose consecutive sentences.

cleansing period had lapsed by the commission date of the current offenses. On April 7, 2022, the trial court held a hearing on both motions to reconsider sentence. Following arguments, the trial court denied both the State's and Defendant's motions to reconsider sentence.

On April 12, 2022, Defendant filed a motion for appeal which was granted by the trial court. Defendant is again before this court alleging two counseled assignments of error and three pro se assignments of error. We find Defendant's habitual offender sentences should be affirmed.

## FACTS

In *Brown*, 299 So.3d at 666, this court set forth the following facts:

> At sentencing, the trial court summarized the relevant facts as follows:
>
> > According to the offense reports, on June the 8th, 2017, a search warrant was obtained by the Vernon Parish Narcotics Task Force, based on the Task Force making three controlled buys of crack cocaine from 1729 Nona Street, Leesville, Louisiana[,] during the months of April through June 2017. The controlled buys were made from a known drug dealer, Casetti Brown, Jr. On June the 9th, 2017, agents executed the warrant and made contact with Brown at the residence on Nona Street. During the investigation, search, and questioning of Mr. Brown, crack cocaine and weapons were found inside the residence. Mr. Brown was charged with possession of Schedule I with intent to distribute, possession of Schedule II methamphetamine with intent to distribute, possession of Schedule II cocaine with intent to distribute, possession of a firearm by a convicted felon, and possession of a firearm while in possession of a controlled dangerous substance. On October the 31st, 2017, another search warrant was obtained due to additional criminal activity supported by controlled purchases of illegal narcotics from Casetti Brown, Jr. at 1729 Nona Street, Leesville, Louisiana. Mr. Brown had bonded out on the earlier arrest and continued his criminal activity. Contact was made by Vernon Parish Narcotics Task Force, uh, and Casetti Brown, Jr., Jerry Brown, and Steven Brown were secured without incident.

4

During the search, a substance was found that was field tested and was positive for cocaine. Another substance was found that was tested and was positive for methamphetamine. Another firearm was found in the residence and approximately 90 red-in-color seeds or plants were found which is a type of a poisonous plant.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is an error concerning both the parole restriction imposed on the sentences for possession with the intent to distribute cocaine and the sentence for possession of methamphetamine.

Although La.R.S. 15:529.1(G) requires all enhanced sentences to be imposed without benefit of probation or suspension of sentence, it does not authorize the trial court to impose enhanced sentences without benefit of parole. "[T]he restrictions on parole eligibility imposed on multiple offender sentences under La.R.S. 15:529.1 'are those called for in the reference statute.'" *State v. Tate*, 99-1483, pp. 1-2 (La. 11/24/99), 747 So.2d 519, 520. At the time of commission of the offenses, La.R.S. 40:967(B)(4)(b) required *only the first two years* of a sentence for possession with the intent to distribute cocaine to be imposed without the benefit of parole, and La.R.S. 40:967(C)(2) contained no parole restriction for possession of methamphetamine. Accordingly, this court amends Defendant's sentence for possession with the intent to distribute cocaine to require that only the first two years be served without the benefit of parole, and we hereby strike the denial of parole eligibility from Defendant's sentence for possession of methamphetamine. Additionally, the trial court is instructed to make

an entry in the court minutes reflecting these changes. *See State v. Willliams*, 16-140 (La.App. 3 Cir. 9/28/16), 201 So.3d 379.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first counseled assignment of error, Defendant claims "[t]he trial court abused its discretion by imposing substantially harsher sentences than the sentences originally imposed on each count, in violation of *North Carolina v. Pearce*, 395 U.S. 711, and the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States."

Before addressing the applicable law and Defendant's arguments, we have set forth the relevant discussion from Defendant's original appeal to clarify any confusion that may arise from this subsequent analysis:

> In his fourth counseled assignment of error, Mr. Brown contends that the trial court's imposition of consecutive sentences, totaling one-hundred sixty-five years at hard labor without benefit of probation, parole, or suspension of sentence, was cruel and unusual punishment and that, consequently, his sentences are unconstitutional. Notably, this is the same argument presented in Mr. Brown's motion to reconsider sentence and is, therefore, properly before this court. Mr. Brown points out that of his six convictions, five were enhanced under the habitual offender law before being run consecutive and that four of those convictions arise from the same June 9, 2017 arrest.
>
> . . . .
>
> Mr. Brown argues the trial court's failure to find that he posed "an unusual risk to the public safety warranting more than the thirty-five years" imposed on count one renders his consecutive sentences, at least for counts one through four, excessive. He bases this contention on *State v. Sherer*, 437 So.2d 276, 277 (La.1983), which found:
>
>> Because the function of the consecutive sentence should be similar to the sentence imposed on habitual or dangerous offenders, sentences for crimes arising from a single course of conduct should be concurrent rather than consecutive, absent a showing that the offender poses an unusual risk to the safety of the public. See *State v. Franks*, 373 So.2d 1307 (La.1979); *State v. Cox*, 369

6

So.2d 118 (La.1979). *Cf.* La.C.Cr.P. art. 883. We cannot presume that the sentencing judge viewed the defendant as an unusual risk to the safety of the public because he did not so state. Instead, the judge expressed his belief that the defendant had become virtually rehabilitated and should be released on parole at the earliest possible time. For these reasons, the imposition of consecutive rather than concurrent sentences totaling 12 years at hard labor upon a defendant deemed parole-eligible by the sentencing judge for crimes of criminal negligence, rather than intentional offenses, arising from a single course of conduct, are unexplained by the judge's statements and unillumined by this problematic record.

The trial court, during sentencing, stated several reasons for why he felt Mr. Brown's sentences should be consecutive, rather than concurrent: (1) Mr. Brown had a lengthy criminal history of firearm and drug charges; (2) while on bond for drug charges arising out of the June 9, 2017 arrest, Mr. Brown continued to sell drugs; (3) despite having no work history, Mr. Brown was able to post bond of over $225,000 in roughly a week; (4) the volume of drugs and weapons seized from Mr. Brown's residence; and (5) Mr. Brown's residence contained multiple electronic scales and "every type of drug paraphernalia needed to get people high." Further, the trial court noted that Mr. Brown, based upon his convictions, had been selling illegal narcotics for over two decades and was "the true definition of a drug dealer." The trial court observed that even after conviction and serving time, Mr. Brown started drug dealing again upon his release. The trial judge also stated his belief that Mr. Brown had directed counsel to ask questions designed to try and figure out the identities of the confidential informants whose purchases led to the two search warrants.

Mr. Brown asserts that these reasons "might justify consecutive sentences for each of the two offense dates, but not for the charges arising from the same search." Because we have vacated the sentences for counts six and seven, the sentences remaining before us all arise from the same offense date and same course of conduct. Running these four sentences consecutively leaves Mr. Brown with a one-hundred-thirty-year sentence.

As noted in *Sherer*, consecutive sentences are similar in nature to a habitual offender enhancement. Consequently, the imposition of multiple consecutive, habitual offender enhanced sentences is suspect without some evidence the defendant is an undue risk to the public. Though the trial judge believed that Mr. Brown did pose such a risk, we find, however, that the resulting one-hundred-thirty-year sentence herein is not supported by the evidence presented at sentencing. Moreover, the sentences were already enhanced under the

law. *See* La.R.S. 15:529.1. The trial court's reasons do not justify consecutive sentences on four crimes that all occurred simultaneously.

Additionally, the recently enacted Louisiana's Justice Reinvestment Reforms of 2017 implore us to seriously consider Louisiana's history of long-term incarceration. *See* 2017 La. Acts Nos. 258, 260, 261, 262, 264, 265, 277, 280, 281, and 282. In keeping therewith, we find the imposition of concurrent rather than consecutive sentences for crimes arising out of the same conduct would better serve the policy behind the Justice Reinvestment Initiative of reducing sentences for certain drug offenses as well as habitual offender penalties. *See* 2017 La. Acts Nos. 281 and 282.

*Accordingly, we remand this matter to the trial court for resentencing with concurrent sentences on counts one through four, with the length of the sentences to be in accordance with the enhanced sentencing provisions of the Habitual Offender Law, La.R.S. 15:529.1.*

. . . .

### CONCLUSION

For the foregoing reasons, Mr. Brown's convictions and individual sentences in counts one through four are affirmed. Pursuant to *Ramos*, Mr. Brown's convictions and sentences on counts six and seven are vacated. This case is further remanded to the trial court for resentencing in order to sentence Mr. Brown on counts one through four concurrently, with the length of the sentences to be in accordance with the enhanced sentencing provisions of the Habitual Offender Law, La.R.S. 15:529.1, and for a new trial on counts six and seven.

**AFFIRMED IN PART; VACATED IN PART; AND REMANDED.**

*Brown*, 299 So.3d at 668-81 (emphasis added).

In his original appeal, Defendant challenged his sentences as constitutionally excessive based on the consecutive nature of his sentences for counts one through four which, in effect, resulted in an aggregate sentence of one hundred thirty years. This court did not determine whether the individual sentences imposed were constitutionally excessive but rather, this court found Defendant's aggregate sentence to be constitutionally excessive. We find that despite the dispositive language in the opinion affirming Defendant's convictions and individual

8

sentences, this court did not make such a determination in its analysis of whether his sentences were constitutionally excessive. Therefore, the trial court did not violate this court's remand order at resentencing when it increased the individual sentences Defendant received.

This court will now address Defendant's argument that the trial court abused its discretion by imposing harsher individual sentences on remand, in violation of *Pearce*, 395 U.S. 711, and the Due Process Clause of the Fourteenth Amendment. In *Pearce*, 395 U.S. at 723-26 (footnotes omitted)(alteration in original), the United States Supreme Court discussed the constitutional limitations of a trial court's imposition of a more severe punishment after conviction upon retrial:

> It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside. Where, as in each of the cases before us, the original conviction has been set aside because of a constitutional error, the imposition of such a punishment, "penalizing those who choose to exercise" constitutional rights, "would be patently unconstitutional." United States v. Jackson, 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138. And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to "chill the exercise of basic constitutional rights." *Id.*, at 582, 88 S.Ct., at 1216. *See also* Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; *cf.* Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718. But even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law. "A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant." Nichols v. United States, 106 F. 672, 679. A court is "without right to * * * put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. * * * [I]t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." Worcester v. Commissioner of Internal Revenue, 1 Cir., 370 F.2d 713, 718. See Short v. United States, 120 U.S.App.D.C. 165, 167, 344 F.2d 550, 552. "This Court has never held that the States are required to establish avenues of

appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899." Rinaldi v. Yeager, 384 U.S. 305, 310-311, 86 S.Ct. 1497, 1500-1501, 16 L.Ed.2d 577.

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

Louisiana adopted the *Pearce* rule in *State v. Rutledge,* 259 La. 543, 250 So.2d 734 (1971). Further, this court found the general principles set forth in *Pearce* apply to circumstances in which only the original sentence is successfully attacked. *State v. Jenkins*, 451 So.2d 1142 (La.App. 3 Cir. 1984).

In brief to this court, Defendant observes the individual sentences imposed for counts one, three, and four are more than double the sentences the trial court originally imposed. Additionally, Defendant argues that although the new aggregate sentence is less than the original aggregate sentence, the trial court ignored the spirit of this court's opinion in *Brown*, 299 So.3d 661, by severely sentencing Defendant without providing additional justification. Finally,

Defendant contends that each sentence must be individualized to the particular offense, and as a result, "each sentence must stand on its own."

In opposition, the State argues the trial court complied with this court's remand instructions to sentence Defendant to concurrent sentences "in accordance with the enhanced sentencing provisions of the Habitual Offender Law, La.R.S. 15:529.1." Further, the State contends the trial court justified the sentences by declaring that Defendant was "an unusual risk to public safety, and it is my intent that you do not sell any more drugs in Vernon Parish or anywhere else for that matter." Finally, the State points out that the time Defendant will spend in prison was reduced from one hundred thirty years to eighty years, though his individual sentences for counts one through four were increased.

We will now determine whether the trial court committed a *Pearce* violation by increasing the individual sentences Defendant received on each count as Defendant suggests, or whether the trial court acted within its discretion in increasing the individual sentences Defendant received as a means of bringing its original sentencing intentions to fruition as the State suggests.

In *State v. Sims*, 505 So.2d 755, 757 (La.App. 2 Cir.), *writ denied*, 508 So.2d 65 (La.1987) (emphasis added), the second circuit addressed the relevance of comparing aggregate sentences:

> If we compare the new individual sentences with the original individual sentences in light of *Pearce,* we would be forced at least to set aside the sentences imposed in counts one, two and three and again remand for resentencing. If we are to compare the new aggregate sentences against the original aggregate to determine if the penalty imposed on resentencing is the same, harsher, or less, then we are forced to compare apples and oranges with only apples. *We conclude that it is permissible in this multiple count situation to compare the respective aggregate sentences rather than individual sentences. See State v. Franks,* [391 So.2d 1133 (La.1980), *cert. denied*, 450 U.S. 983, 101 S.Ct. 1520 (1981)]; *State v. Jenkins, supra.*

11

The *Sims* court concluded the new aggregate sentence was less severe than the original aggregate sentence and then determined the new aggregate sentence was not constitutionally excessive. *Id.*

In *State v. Freeman,* 577 So.2d 216 (La.App. 1 Cir.), *writ denied,* 580 So.2d 668 (La.1991), the defendant was originally sentenced as a habitual offender to concurrent sentences of twenty-four years for simple burglary and twenty years for theft. Subsequently, his habitual offender adjudication was vacated, and he was resentenced to consecutive sentences of twelve years for simple burglary and ten years for theft. *Id.* The first circuit found no *Pearce* violation, stating:

> [T]he defendant did not receive increased sentences upon resentencing. Although the trial court ordered the instant sentences to run consecutively, rather than concurrently (as it had done at the original sentencing hearing), there is no indication that the trial court was being vindictive. Instead, by imposing sentences totaling twenty-two years at hard labor, the trial court was obviously trying to come as close to its original sentencing scheme (a total of twenty-four years at hard labor) as possible.

*Id.* at 218-19 (footnote omitted).

This court addressed a situation contrary to the situation in the current case in *State v. Runyon*, 06-823 (La.App. 3 Cir. 12/6/06), 944 So.2d 820, *writ denied*, 07-49 (La. 9/21/07), 964 So.2d 330. In *Runyon*, the defendant was sentenced to concurrent terms of forty years for manslaughter and forty years for attempted second degree murder. On appeal, this court upheld his manslaughter conviction but reversed his attempted second degree murder conviction and entered a judgment of aggravated battery. *Id.* This court also found his manslaughter sentence to be excessive, and the matter was remanded for resentencing on both convictions. *Id.* On remand, the trial court sentenced the defendant to ten years for aggravated battery and thirty years for manslaughter and imposed the sentences

12

consecutively. *Id.* Though the new sentences were less than the sentences initially imposed, the net effect was the same. This court held there was no *Pearce* violation as the sentences were roughly the same amount of time in the aggregate.

Based on the foregoing, we find there was no *Pearce* violation even though Defendant's individual sentences were increased on remand. The trial court increased the individual sentences Defendant received to reflect its original sentencing intentions. The original sentences for counts one through four imposed a term of incarceration of one hundred thirty years in the aggregate, whereas the new sentences impose a term of incarceration of eighty years. Defendant received a significant benefit from the reduction of actual incarceration time. Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second counseled assignment of error, Defendant asserts his sentences are constitutionally excessive because each of the sentences were enhanced under the habitual offender laws and are in the higher range of sentencing possibilities.[3] The State asserts the trial court did not abuse its discretion in sentencing Defendant based on his extensive criminal history and the extreme risk he poses to public safety.

Louisiana Code of Criminal Procedure Article 881.1(E) provides the mechanism for preserving the review of a sentence on appeal:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

---

[3] We note that Defendant presents a very limited argument to bolster his excessive sentence claim and even acknowledges that the number of drug convictions constitutes an aggravating circumstance.

Although Defendant filed a motion to reconsider after his resentencing, he failed to specifically allege that his sentences were constitutionally excessive. Therefore, the appeal is limited to a bare excessiveness review. *State v. Vice*, 21-143 (La.App. 3 Cir. 10/6/21), 329 So.3d 388.

Louisiana courts have laid out the following guidelines regarding excessive sentence review:

> Sentences within the statutory sentencing range can be reviewed for constitutional excessiveness. *State v. Sepulvado*, 367 So.2d 762 (La.1979). In *State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, a panel of this court discussed the review of excessive sentence claims, stating:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La. 6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
>
> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57 (citing *State v. Telsee*, 425 So.2d 1251 (La.1983)), *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183. In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, a panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96); 674 So.2d 957, 958.

*State v. Soileau*, 13-770, 13-771, pp. 4-5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005-06, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261 (alteration in original).

Furthermore, in *State v. Baker*, 06-1218 (La.App. 3 Cir. 4/18/07), 956 So.2d 83, *writ denied*, 07-320 (La. 11/9/07), 967 So.2d 496, *writ denied*, 07-1116 (La. 12/7/07), 969 So.2d 626, this court adopted the fifth circuit's three-factor test from *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183.

Regarding the nature of the offenses, on counts one through three, Defendant was adjudicated a fourth felony habitual offender and sentenced to eighty years at hard labor pursuant to La.R.S. 15:529.1(A)(4)(a). Counts one and two were ordered to be served without the benefit of probation or suspension of sentence, whereas count three was ordered to be served without the benefit of parole, probation, or suspension of sentence. At the time of the offenses, La.R.S. 15:529.1(A)(4)(a) provided for a sentence of "a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life[.]" Therefore, the sentences for count one (possession with the intent to distribute cocaine), count two (possession of methamphetamine), and count three (illegal carrying of a weapon while in

15

possession of a CDS) fall within the statutory limits of not less than twenty years but not more than life imprisonment.

On count four, Defendant was adjudicated a third felony habitual offender and sentenced to forty years at hard labor without the benefit of parole, probation, or suspension of sentence pursuant to La.R.S. 15:529.1(A)(3)(a). At the time of the offense, La.R.S. 15:529.1(A)(3)(a) provided for a sentence of a "determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the possible sentence prescribed for a first conviction[.]" The sentencing range for the underlying offense, possession of a firearm by a convicted felon, was ten to twenty years at hard labor without the benefit of parole, probation, or suspension of sentence. La.R.S. 14:95.1(B). Therefore, Defendant received the maximum enhanced sentence for this conviction.

As to the nature and background of the offender, this court looks to the comments made at his sentencing and resentencing hearings. The trial court noted a lengthy history of felony and misdemeanor convictions, including numerous firearm and drug convictions. Defendant was labeled "the true definition of a drug dealer" as the trial court stated he had been selling drugs for over two decades despite his various drug-related arrests. The trial court observed that even after conviction and serving time, Defendant started dealing drugs again upon his release. The PSI reflected no evidence of a work history, yet Defendant was able to post bond of over $225,000 in roughly a week. Finally, the trial court noted that Defendant had not and would not abide by the law. The trial court did not find any mitigating evidence.

The final factor in *Baker* is a comparison of the sentences imposed for similar crimes. As stated above, Defendant was given concurrent eighty-year

16

sentences for possession with the intent to distribute cocaine (count one) and possession of methamphetamine (count two) as a fourth felony habitual offender. The State directs this court's attention to *State v. Sullivan*, 51,180, 51,181 (La.App. 2 Cir. 2/15/17), 216 So.3d 175, where the defendant was convicted of three counts of distribution of cocaine and one count of distribution of methamphetamine. He was later adjudicated a fourth felony habitual offender and sentenced to concurrent terms of sixty years at hard labor on each count without the benefit of probation or suspension of sentence. *Id.* The second circuit found the trial court did not abuse its sentencing discretion as it "considered the aggravating and mitigating circumstances, Sullivan's personal history, the seriousness of the offenses, and the likelihood of rehabilitation." *Id.* at 185. Like Defendant, Sullivan was described as an experienced drug distributer who demonstrated a lack of respect for the law and a lack of desire to reform. *Id.*

However, the State also notes that Defendant did not receive the maximum life sentences he could have received under La.R.S. 15:529.1(A)(4)(a). In *State v. Douglas*, 10-2039 (La.App. 1 Cir. 7/26/11), 72 So.3d 392, *writ denied*, 11-2307 (La. 5/25/12), 90 So.3d 406, *writ denied*, 12-2508 (La. 5/3/13), 115 So.3d 474, the defendant was convicted of attempted possession of cocaine, in violation of La.R.S. 40:967, adjudicated a fourth felony habitual offender, and sentenced to life imprisonment. In affirming the defendant's sentence, the first circuit held:

> Based on his prior convictions, as a fourth-felony habitual offender, the defendant was exposed to a penalty of imprisonment, with or without hard labor, for a minimum of twenty years to a maximum of life. *See* LSA–R.S. 40:967(C)(2); LSA–R.S. 14:27(D)(3) and LSA–R.S. 40:979(A). *See also* LSA–R.S. 15:529.1(A)(1)(c)(i) (prior to the 2010 amendments). As previously noted, the defendant received the maximum sentence. This court has stated that maximum sentences permitted under statute may be imposed only for the most serious offenses and the worst offenders, *State v. Easley*, 432 So.2d

17

910, 914 (La.App. 1st Cir.1983), or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. *See State v. Chaney*, 537 So.2d 313, 318 (La.App. 1st Cir.1988), *writ denied*, 541 So.2d 870 (La.1989).

Initially we point out that, in denying two separate motions for reconsideration of the sentence, the trial court specifically noted that all relevant aggravating and/or mitigating circumstances were taken into consideration. Further, the evidence introduced at the habitual offender hearing in this case established that the defendant has been committing felony drug offenses since 1990. Considering the defendant's extensive criminal record, we find that the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the statutory maximum sentence upon the defendant. Such a sentence is clearly supported by the record. The defendant, who has repeatedly committed felony drug offenses, poses an unusual risk to public safety and is exactly the type of recidivist that the Habitual Offender Law intends to punish severely. The maximum sentence imposed in this case is not unconstitutionally excessive.

*Id.* at 397.

A panel of this court recently upheld a life sentence for a defendant convicted of possession of a Schedule II controlled dangerous substance and adjudicated a fourth felony habitual offender pursuant to La.R.S. 15:529.1(A)(4)(a). *State v. Cooley*, 22-140 (La.App. 3 Cir. 10/5/22) (unpublished opinion).

For count three, illegal carrying of a weapon while unlawfully in possession of a controlled dangerous substance, Defendant also received an eighty-year sentence as a fourth felony habitual offender. We find the trial court did not abuse its sentencing discretion based on Defendant's history of drug and firearm arrests and convictions. Furthermore, based on the recommendation that the eighty-year sentences for possession with the intent to distribute cocaine (count one) and possession of methamphetamine (count two) are not excessive, we similarly find the eighty-year sentence for count three is not excessive.

18

Finally, Defendant received the maximum forty-year sentence for count four, possession of a firearm by a convicted felon, as a third felony habitual offender. As Defendant notes in his appellate brief, "Generally, maximum sentences are reserved for the most serious violation of the offense and the worst type of offender." *State v. Herbert*, 12-228, p. 5 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, 920, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78. However, we find Defendant fits within that category based on his extensive criminal history and disregard for public safety. In *State v. Martin*, 17-1100 (La.App. 1 Cir. 2/27/18), 243 So.3d 56, *writ denied*, 18-568 (La. 3/6/19), 266 So.3d 901, the defendant was convicted of two counts of aggravated assault with a firearm, attempted aggravated assault with a firearm, and possession of a firearm by a convicted felon. The defendant was later adjudicated a second felony habitual offender with respect to possession of a firearm by a convicted felon and sentenced to the maximum sentence which the first circuit affirmed on appeal. *Id.*

> At the time of the defendant's underlying offense, felon in possession of a firearm, the offense carried a sentence of imprisonment at hard labor for not less than ten nor more than twenty years without the benefit of probation, parole, or suspension of sentence, and a fine of not less than one thousand dollars nor more than five thousand dollars. La. R.S. 14:95.1B. As a second-felony habitual offender, the defendant's mandatory sentence was not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. La. R.S. 15:529.1A(1) (prior to revision by 2017 La. Acts No. 282, § 1). Thus, the defendant's sentencing exposure was ten years to forty years without the benefit of parole, probation, or suspension of sentence. See *State v. Bruins*, 407 So.2d 685, 687 (La. 1981). The defendant was sentenced to forty years at hard labor without the benefit of probation or suspension of sentence.

> The defendant contends that this sentence is "beyond excessive" based on the facts of the case and the wishes of his family and the victims in this case that he receive mental health treatment. Despite his contentions, the defendant did not present any testimony or evidence prior to the imposition of his habitual offender sentence in

support of this argument. Given the facts of this case and the defendant's predicate convictions for drug-related felonies and simple burglary, the sentence imposed by the district court was not grossly disproportionate to the severity of the offense and, therefore, was not excessive. This assignment of error is without merit.

*Id*. at 66-67 (footnote omitted).

Based on the foregoing, we find the trial court did not abuse its sentencing discretion. The record demonstrates that Defendant has a lengthy criminal history, and he has been given numerous opportunities to reform and has failed to do so. Further, the record supports the trial court's reasoning that lesser sentences would deprecate the seriousness of the offenses and that there is an undue risk during the period of a suspended sentence or probation that Defendant would commit another crime. The trial court thoroughly detailed the factors it found in aggravation and the fact that no mitigating factors existed. The sentences are not out of proportion to the seriousness of the offenses, nor do they shock the sense of justice. Therefore, the trial court did not err in sentencing Defendant to concurrent sentences of eighty years at hard labor for counts one through three and forty years at hard labor for count four.

Accordingly, Defendant's sentences are not constitutionally excessive, and this assignment of error is without merit.

## PRO SE ASSIGNMENTS OF ERROR
## NUMBERS ONE, TWO, AND THREE

In his first pro se assignment of error, Defendant challenges his adjudication as a third felony habitual offender and a fourth felony habitual offender on the contention that the State failed to prove the five-year cleansing period had not lapsed. Similarly, in his second pro se assignment of error, Defendant argues the "State failed to establish when the defendant was actually discharged from Federal

20

custody[.]" Finally, Defendant alleges the trial court failed to address certain matters in his motion to reconsider sentence, specifically his argument that the cleansing period had lapsed. Because these assignments of error are intertwined, they will be discussed together.

In *Brown*, 299 So.3d at 678-79 (footnotes omitted), this court affirmed Defendant's habitual offender adjudication based on the following:

> [T]he trial court erred in finding the applicable cleansing period was ten years. However, the trial court calculated Mr. Brown's cleansing time as amounting to "just less than three (3) years" for the convictions arising out of the June 3, 2017 arrest and "just over three (3) years" for the convictions arising out of the October 31, 2017 arrest. The trial court calculated this time based upon a September 8, 1994 conviction, a September 8, 1995 conviction with a May 7, 1995 offense date, and a March 14, 2006 conviction with an August 14, 2003 offense date, as follows:
>
> > The time between the first conviction on September 8, 1994 until the offense date of his second felony of May 7, 1995 is zero (0) years, as he was still on felony supervision. The time between the second conviction of September 8, 1995 until the third conviction offense date of August 14, 2003 is zero (0) years, as he was still on felony supervision. Mr. Brown was released from felony supervision on July 25, 2014. The instant offenses were committed June 9, 2017 and October 31, 2017.
>
> As will be discussed below, Mr. Brown contends the use of the July 25, 2014 date, the date he was released from federal custody, was error. . . .
>
> . . . .
>
> As stated above, the trial court erred in finding the applicable cleansing period was ten years when it was actually five years. In its habitual offender memorandum to the trial court, the State correctly asserted there was a five-year cleansing period. Despite this, however, we find the trial court did not err in finding Mr. Brown's cleansing period did not begin until his release from federal custody, as Louisiana courts have unanimously and consistently held that computation of the cleansing period is based upon actual date of release from custody or supervision. *See State v. Anderson*, 349 So.2d 311 (La.1977); *State v. Robinson*, 549 So.2d 1282 (La.App. 3 Cir.

21

1989); *State v. Thomas*, 52,617 (La.App. 2 Cir. 5/22/19), 272 So.3d 999, *writ denied*, 19-1045 (La. 2/10/20), 292 So.3d 61; and *State v. Stock*, 16-552 (La.App. 5 Cir. 2/22/17), 212 So.3d 1268.

> There is no dispute that Mr. Brown was released from federal custody on July 24, 2014 [the day the bill of indictment was dismissed]. While the State bears the burden of proving the cleansing period had not passed, the evidence produced at the hearing established that Mr. Brown was not released from federal custody until July 24, 2014. Accordingly, we find the trial court's calculation of Mr. Brown's cleansing period was correct and the applicable five-year cleansing period had not run when Mr. Brown was arrested in June of 2017. This assignment of error, therefore, lacks merit.

Nevertheless, after affirming his habitual offender adjudication, this court observed in a footnote that:

> Mr. Brown's supervised release on his March 14, 2006 conviction was revoked on October 28, 2010. However, sentencing was "deferred until charges contained in violation #1 are disposed of." On February 29, 2012, Mr. Brown was then "sentenced to 24 months, concurrent with sentence imposed in 2:10-cr-00291" of 150 months incarceration, with eight years of supervised release and credit for time served. The federal docket number 2:10-cr-00291 is the docket number vacated in *U.S. v. Brown*, 567 F.App'x. 272. Given all of this information, Mr. Brown is correct that he should have been released from custody on his 2006 conviction no later than October 28, 2012, given his revocation date, sentence, and not granting any good time diminutions of sentence.

*Id*. at 679, n.7. Defendant sought review of this court's determination that the five-year cleansing period had not lapsed, and the supreme court denied writs in *Brown*, 305 So.3d 105.

At his resentencing hearing, Defendant orally moved to quash the habitual offender bill based on his argument that the five-year cleansing period had lapsed by the commission date of the current offenses. The trial court read directly from this court's opinion affirming Defendant's habitual offender adjudication, denied the motion, and proceeded with sentencing. On April 27, 2022, Defendant filed a motion to correct illegal sentence and attached two-page documentation purporting

22

to show his actual release from federal custody was May 7, 2012. In written reasons, the trial court again denied the motion, finding the claim was not before the court because Defendant's habitual offender adjudication had been affirmed on appeal. Further, the trial court noted that "unless a pleading captioned as a motion to correct illegal sentence points to a claimed illegal term in the petitioner's sentence, it is not cognizable under Article 882. *See State v. Mead*, [14-1051 (La.App. 4 Cir. 4/22/15),] 165 So.3d 1044[.]"

Defendant raises the same claim in his pro se brief to this court. On September 28, 2022, this court received a "Motion for Leave to Amend Exhibits Within Pro Se Supplemental Brief of Appellant Casetti Brown" wherein Defendant attached additional documentation of his release date from federal custody.

However, because this court affirmed Defendant's habitual offender adjudication based on the information in the record at the time of his adjudication hearing and because the trial court did not consider the documentation Defendant attached to his motion to correct illegal sentence, this court will not consider Defendant's argument that the five-year cleansing period lapsed. Defendant may seek review of the trial court's denial of his motion to correct illegal sentence by filing an application for supervisory writs. La.Code Crim.P. art. 912; *State v. Decay*, 18-626 (La.App. 5 Cir. 2/27/19), 266 So.3d 578.

Accordingly, Defendant's pro se assignments of error are without merit.

**CONCLUSION**

Defendant's habitual offender sentences are hereby affirmed. This court amends Defendant's sentence for possession with the intent to distribute cocaine to require that only the first two years be served without the benefit of parole, and we hereby strike the denial of parole eligibility from Defendant's sentence for

23

possession of methamphetamine.  Additionally, the trial court is instructed to make an entry in the court minutes reflecting these changes.

**AFFIRMED AS AMENDED; REMANDED WITH INSTRUCTIONS.**